**Edna LENN and Homer Lenn, Plaintiffs,**

**v.**

**Robert E. GENTRY, Individually and as a Police Officer in the Police Department of the Town of Newburgh, IN, James Bailey, Individually and as a Police Officer in the Town of Newburgh, IN, and Town of Newburgh, a Municipal Corporation, Defendants.**

**No. EV 88–66–C.**

United States District Court,
S.D. Indiana,
Evansville Division.

Jan. 5, 1990.

On Motion to Reconsider June 13, 1990.

C. Richard Collins, Zoss, D'Amour, Krohn & Collins, Evansville, Ind., for plaintiffs.

Robert T. Bodkin, Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., for defendants.

MEMORANDUM

BROOKS, Chief Judge.

*Findings of Fact*

The following findings of fact, those proposed by defendants in accordance with Local Rule 11, stand uncontroverted and are therefore, as per the Rule, deemed to be admitted to exist without controversy:

1. Plaintiffs, Edna Lenn and Homer Lenn, at all relevant times were and are citizens of the United States, residing in the Town of Newburgh, Indiana.

2. Defendants, Robert E. Gentry and James Bailey, during all relevant times were and are police officers employed by the Town of Newburgh, Indiana, and acted

---

under the color of their purported official capacities under the statutes and ordinances of the Town of Newburgh and the State of Indiana.

3. Defendant, Town of Newburgh, Indiana, at all relevant times was and is a municipal corporation of the State of Indiana.

4. On the night of April 29, 1987, Officers Bailey and Gentry received a call from the Warrick County Dispatch to meet a subject later identified as Ann Herr.

5. The officers met with Ms. Herr and were asked to accompany Ms. Herr to the residence of Edna Lenn and Homer Lenn to enable Ms. Herr to recover her belongings being held by the Lenns.

6. Ms. Herr told Officer Gentry that she had been attacked by Mrs. Lenn during a previous visit to the Lenn residence which had occurred somewhere between February of 1987 and less than a month before the night of April 29, 1987.

7. Ms. Herr asked the officers to accompany her to the Lenn residence because she did not want any further trouble.

8. Ms. Herr admitted she had no papers or Court orders awarding her any of the property located at the Lenns' and was advised by Officer Gentry that while he would accompany her to the Lenn residence, there was nothing he could do for her if the Lenns disputed Ann Herr's right to possession of said belongings.

9. Officers Gentry and Bailey accompanied Ms. Herr and her sister to the Lenn residence to ensure there would be no altercation or further trouble.

10. Earlier in the evening of April 29, 1987, Mr. and Mrs. Lenn, through their attorney, C. Richard Collins, granted permission for Ann Herr to come to their residence to pick up her belongings between 7:00 and 9:00 p.m.

11. Mr. and Mrs. Lenn put said property out into their driveway under a spotlight and waited for Ann Herr to arrive.

12. Ann Herr did not arrive at the Lenns' residence by 9:00 p.m., so Mr. Lenn moved said equipment into his porch and garage because of the threat of rain.

13. At approximately 10:00 p.m., Officers Gentry and Bailey arrived with Ann Herr and her sister at the Lenns' residence.

14. Each officer was driving a police vehicle with all of its lights and warning flashers in operation. The lights and flashers remained on at all times during the period of their stay at the Lenn residence.

15. Ann Herr pulled up between the two police cars in her truck.

16. At the time the officers arrived, Homer Lenn was either on his porch or just coming out of his bathroom.

17. As the officers walked up, Mr. Lenn either went outside to meet the officers or turned on two outside lights and waited inside the door of his residence for the officers to arrive at the door.

18. The discussion that took place between the officers and Homer Lenn was either that stated in this paragraph or the following paragraph. According to Mr. Lenn, that conversation was:

.... I went out and—one of the policemen came up and said, "I understand you have some equipment here that belongs to Mrs. Herr and you won't let her have it," and I said, "Well, you've got that wrong." I said, "She was supposed to be here between 7:00 and 9:00," I said, "We didn't think she was coming so we carried it all back in." He said, "Well, do you care if she gets it now?" And I said, "No, I don't, but I'm not carrying nothing out because I've already carried it out once and she's going to have to come in and get it."

(H. Lenn Depo., p. 6)

19. According to Mrs. Lenn, the conversation was:

A   .... One policeman walked up to the door and said, "I understand you won't let Ann have her things," and he said, "On the contrary, we waited until after 10:00 for her to come and get them," and he said, "Can we pick them up now?" My husband let them do it.

Q   What did he say, your husband, to them?

A  He said, "Yes, go get them."

(E. Lenn Depo., p. 30)

20.  After any one of the conversations hereinbefore described in paragraphs 18 and 19, Ann Herr and her sister and two neighbors spent about one-half hour picking up Ann Herr's property from the Lenn residence.

21.  No property of the Lenns' was removed from their residence and neither police officer directed or assisted in any manner with the removal of said property.

22.  Homer Lenn was not ordered or instructed to assist in the removal of any of said property from his residence.

23.  Homer Lenn did not remove any of said property from his residence and deliver it to Ann Herr or any other person.

24.  During their visit at the Lenn residence, neither police officer entered the Lenn residence.

25.  Shortly after the two police officers and Ann Herr left the Lenn residence, Homer Lenn began to experience chest pains and was subsequently transported to the hospital by Edna Lenn.

26.  After the night in question, Edna Lenn went to the Town of Newburgh Police Department to request a copy of any police records concerning said visit to her home and Chief Patton complied with Mrs. Lenn's request.

27.  Thereafter, neither Homer Lenn nor Edna Lenn had any further conversations with any police officer or official from the Town of Newburgh.

This Court has jurisdiction to decide this motion pursuant to 42 U.S.C. § 1983.

### Discussion

The doctrine of qualified immunity for public officers engaged in official conduct was developed in order that such officials would not feel unduly inhibited in performance of their duties. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The following pronouncement by the United States Supreme Court provides the touchstone for any discussion of this judicial doctrine:

We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Further explaining the doctrine, the Supreme Court has stated that "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).

The test whether the immunity applies is one of "objective legal reasonableness," *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739, the action being viewed "in light of the legal rules that were 'clearly established' at the time it was taken, *id.*, at 818, 102 S.Ct. at 2738." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038–39. Our inquiry, then, for the instant case involves statutory or constitutional rights as they existed on April 29, 1987, the date Officers Gentry and Bailey went with Ann Herr to the Lenn residence.

In their brief in support of their motion, defendants assert that the officers' behavior on the night in question violated no then-existing, or even subsequently established, right of plaintiffs. Plaintiffs respond with ill-defined condemnations of the officers' behavior. Although plaintiffs do refer to important rights protected by the United States Constitution and its first ten amendments, they fail to direct the Court to any case law which indicates that defendants transgressed those rights.

In *Anderson*, the Supreme Court explains "objective legal reasonableness" in the context of qualified immunity. Writing for the majority, Justice Scalia clarified:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by

qualified immunity unless the very action in question has previously been held unlawful (citation omitted); but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. at 640, 107 S.Ct. at 3039. As that passage makes clear, the Court does not need to be shown that the conduct of Officers Gentry and Bailey has previously been held to violate established rights, but that the law (statutory or common) on April 29, 1987, required different behavior.

This Court will not cross the line drawn by the Supreme Court, for if we allowed this cause to continue any further, we would destroy the benefit of qualified immunity. We cannot be put in the position of possibly chilling the performance of police officers in their attempts to protect the peace so long as they remain within the bounds of apparent constitutional confines.

The Court, by this ruling, is not ratifying the conduct of either the officers or the Town. In fact, it is the Court's experience that it is generally unwise for police to become "involved" in disputes of this nature. But their doing so does not mean that they have violated any constitutional rights.

It was reasonable for the police officers to believe that their presence would in fact serve the interests of both the Lenns and Ms. Herr, and might well serve to protect the peace.

While the intentions of the police officers appear to have been laudible, their use of flashing lights is obviously a questionable judgment decision and not necessary. However, this conduct does not rise to a constitutional violation.

It is indeed tragic that Mr. Lenn suffered a heart attack. Whether it was caused by the flashing lights is a determination this Court need not make. The plaintiffs are not alleging that the officers had no right to be present on their property, but only that the use of the lights was an unreasonable invasion of their privacy.

It is clear that the police officers would have left the premises had there been any indication from the Lenns that their presence was not wanted. This simply did not happen. They appeared to be cooperative in seeing that the personal property was removed, although unhappy that it was being accomplished at a time later than previously agreed upon with Ms. Herr.

The Court therefore GRANTS the defendants' Motion for Summary Judgment, and this cause is hereby DISMISSED as to defendants Robert E. Gentry and James Bailey. Also, it is unnecessary for the Court to consider whether defendant Town of Newburgh may be held under *responde-at superior* for the conduct of the officers, and this cause is hereby DISMISSED as to this defendant as well.

## ON MOTION TO RECONSIDER

This matter is before the Court on plaintiffs' Motion to Reconsider filed January 16, 1990. The defendants filed a Reply to Plaintiffs' Memorandum of Law in Support of Motion to Reconsider on January 19, 1990.

The Court, after considering the motion and memoranda, and being duly advised, now DENIES plaintiffs' Motion to Reconsider.

IT IS SO ORDERED.

## MEMORANDUM

Plaintiffs' ask the Court to reconsider its Order, dated January 5, 1990 [hereafter "Order"] which dismissed plaintiffs' cause against defendants, the Court deciding therein that qualified immunity should attach to defendants' actions. Plaintiffs' take this opportunity to narrow the focus of the inquiry from the approach they took in their memorandum of law opposing summary judgment. (See Memorandum dated August 16, 1989).

As noted in the Court's Order, plaintiffs failed to define the specific manner in which it was alleged the officers' conduct violated plaintiffs' rights. The Court was not asking, as plaintiffs suggest in the memorandum accompanying the motion to reconsider, that they produce case law that was on "all fours" with the facts in this case. The Court was instead asking only

that plaintiffs point narrowly to specifically which rights were alleged to be violated and how the conduct of defendants violated those rights.

In their motion to reconsider and at oral argument, plaintiffs urged the Court to adopt their position that *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) indicates a violation by defendants of plaintiffs' Fourth Amendment rights. Plaintiffs also cite the Court to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Plaintiff correctly notes that a show of authority *can* sufficiently restrain the liberty of a citizen to trigger constitutional protection. Now that the Court is sufficiently aware of the specific Constitutional rights alleged to have been violated, we must examine whether defendants are entitled to qualified immunity for their conduct in this circumstance.

As the Supreme Court made clear in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the test of "clearly established law" cannot be applied at too great a level of generality. *Id.* at 639, 107 S.Ct. at 3038–39. To direct this Court's attention to the Fourth Amendment and state that it is clearly established law that unreasonable seizures are unconstitutional merely begs the question. It must have been clearly established on the date that this occurrence took place that the conduct of the officers constituted an unreasonable seizure of plaintiffs, *Id.* at 639 & 640, 107 S.Ct. at 3038 & 3039, and if it had not been so established as law, then defendants are entitled to be protected by qualified immunity from having to proceed in the defense of this action.

The Court has examined case law development in the area of Fourth Amendment seizures and cannot conclude that on April 29, 1987 (nor, for that matter thereafter) has it been clearly established law that the officers behavior here constituted an unreasonable seizure of plaintiffs. "The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have be-

lieved that he was not free to leave.' [*United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Opinion of Stewart, J.)]. The Court has since embraced this test. See *INS v. Delgado*, 466 U.S., [210] at 215 [104 S.Ct. 1758, 1762, 80 L.Ed.2d 247]." *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). The question then, in seeking a determination of whether the officers' conduct constituted a seizure is not what Homer and Edna Lenn particularly felt, but what a reasonable person would have believed.

Plaintiffs seek to convince the Court that the officers' act of using the flashing lights on the top of the police cars represented a show of force sufficient to constitute a seizure. The Court must, however, look at all the circumstances surrounding the incident in order to decide this question. *Mendenhall*, 446 U.S. at 554–55, 100 S.Ct. at 1877–78.

Although the officers did, indeed, approach the Lenn home with their lights flashing, the behavior of Gentry and Bailey upon arriving, as described by plaintiffs in pleadings and deposition testimony, would not indicate to the reasonable person that he or she was not "free to leave." On the contrary, Mr. Lenn's deposition testimony indicates that one of the officers asked, " 'Well, do you care if she [Mrs. Herr] gets it [her equipment] now?' And I said, 'No, I don't, but I'm not carrying nothing out because I've already carried it out once and she's going to have to come in and get it.' " (H. Lenn Depo., p. 6) The officer's question was not phrased as an official demand. [In the Court's Order, it was erroneously stated: "It is clear that the police officers would have left the premises had there been any indication from the Lenns that their presence was not wanted." (Op. at p. 1345) What the Court intended by this statement was that *a reasonable person would have understood* by the manner of the questioning that their movement was not being restrained.] It is not enough to establish a seizure that the person asking the questions is a law enforcement official. *Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1877–78. The factual findings of the Court

in its prior order indicate that "[a]s the officers walked up, Mr. Lenn either went outside to meet the officers or turned on two outside lights and waited inside the door of his residence for the officers to arrive at the door." (Op. at p. 1343) Mr. Lenn was not summoned to the door by the officers; he went out and waited for them. (H. Lenn Depo., p. 6)

The totality of the circumstances would not, this Court concludes, lead a reasonable person to believe that he or she was not free to leave and withdraw into the house. There was no seizure.

Even were the Court to conclude that there had at some point during the encounter been a seizure of Mr. Lenn, under the state of the law as it existed that night, it would not have been apparent to a reasonable officer that he or she was unreasonably seizing Mr. Lenn by his actions. According to *Anderson v. Creighton, supra,* this must be the case before the Court can move beyond the qualified immunity to which Officers Gentry and Bailey were entitled. 483 U.S. at 640, 107 S.Ct. at 3039. Plaintiff has directed our attention to no case law which would indicate that there was pre-existing law of the nature to which the Supreme Court referred in *Anderson v. Creighton.*

As the Supreme Court indicated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether the law was clearly established at the time an action occurred." [footnote omitted.] *Id.* at 818, 102 S.Ct. at 2738. In light of the state of the applicable law and given this Court's determination that there was no seizure of Mr. Lenn, this Court finds that it would not have been apparent to Officers Gentry and Bailey that their behavior violated Mr. Lenn's Fourth Amendment rights. Defendants are therefore entitled to qualified immunity for their conduct and this action should not proceed.

The Court therefore DENIES plaintiffs' Motion to Reconsider and AFFIRMS its prior Order granting summary judgment in favor of defendants.