## MICHIGAN *v.* CHESTERNUT

No. 86–1824.   Argued February 24, 1988—Decided June 13, 1988

BLACKMUN, J., delivered the opinion for a unanimous Court.  KENNEDY, J., filed a concurring opinion, in which SCALIA, J., joined, *post,* p. 576.

*Andrea L. Solak* argued the cause for petitioner.  With her on the briefs was *Timothy A. Baughman.*

*Carole M. Stanyar* argued the cause and filed a brief for respondent.\*

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Fried, Assistant Attorney General Weld, Deputy Solicitor General Bryson,* and *Paul J. Larkin, Jr.;* and for the States of Alabama et al. by *Michael W. Catalano* and by the Attorneys General for their respective States as follows: *Don Siegelman* of Alabama, *Grace Berg Schaible* of Alaska, *John Steven Clark* of Arkansas, *John J. Kelly* of Connecticut, *Charles M. Oberly* of Delaware, *Robert Butterworth* of Florida, *Warren Price III* of Hawaii, *Jim Jones* of Idaho, *Neil F. Hartigan* of Illinois, *Linley E. Pearson* of Indiana, *Robert T. Stephan* of Kansas, *David L. Armstrong* of Kentucky, *William J. Guste, Jr.,* of Louisiana, *James E. Tierney* of Maine, *Hubert H. Humphrey III* of Minnesota, *Edwin L. Pittman* of Mississippi, *William L. Webster* of Missouri, *Mike Greely* of Montana, *W. Cary Edwards* of New Jersey, *Lacy H. Thornburg* of North Carolina, *Nicholas Spaeth* of North Dakota, *Robert Henry* of Oklahoma, *Travis Medlock* of South Carolina, *Roger A. Tellinghuisen* of South Dakota, *W. J. Michael Cody* of Tennessee, *David L. Wilkinson* of Utah, *Jeffrey Amestoy* of Vermont, *Mary Sue Terry* of Virginia, *Kenneth O. Eikenberry* of Washington, *Charles G. Brown* of West Virginia, *Don J. Hanaway* of Wisconsin, and *Joseph B. Meyer* of Wyoming.

*Nancy Hollander* and *David A. Freeman* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

*Fred E. Inbau, Wayne W. Schmidt, James P. Manak, David Crump, Courtney A. Evans,* and *Daniel B. Hales* filed a brief for Americans for Effective Law Enforcement, Inc., et al. as *amici curiae.*

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case we review a determination by the Michigan Court of Appeals that any "investigatory pursuit" of a person undertaken by the police necessarily constitutes a seizure under the Fourth Amendment of the Constitution. We conclude that the police conduct in this case did not amount to a seizure, for it would not have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.

I

Early on the afternoon of December 19, 1984, four officers riding in a marked police cruiser were engaged in routine patrol duties in Metropolitan Detroit. As the cruiser came to an intersection, one of the officers observed a car pull over to the curb. A man got out of the car and approached respondent Michael Mose Chesternut, who was standing alone on the corner. When respondent saw the patrol car nearing the corner where he stood, he turned and began to run. As Officer Peltier, one of those in the car, later testified, the patrol car followed respondent around the corner "to see where he was going." App. 25. The cruiser quickly caught up with respondent and drove alongside him for a short distance. As they drove beside him, the officers observed respondent discard a number of packets he pulled from his right-hand pocket. Officer Peltier got out of the cruiser to examine the packets. He discovered that they contained pills. While Peltier was engaged in this inspection, respondent, who had run only a few paces farther, stopped. Surmising on the basis of his experience as a paramedic that the pills contained codeine, Officer Peltier arrested respondent for the possession of narcotics and took him to the station house. During an ensuing search, the police discovered in respondent's hatband another packet of pills, a packet containing heroin, and a hypodermic needle. Respondent was charged with knowingly and intentionally possessing heroin, tablets

containing codeine, and tablets containing diazepam, all in violation of Mich. Comp. Laws § 333.7403(2) (1980).

At a preliminary hearing, at which Officer Peltier was the only witness, respondent moved to dismiss the charges on the ground that he had been unlawfully seized during the police pursuit preceding his disposal of the packets. The presiding Magistrate granted the motion and dismissed the complaint.[1] Relying on *People* v. *Terrell,* 77 Mich. App. 676, 259 N. W. 2d 187 (1977),[2] the Magistrate ruled from the bench that a police "chase" like the one involved in this case implicated Fourth Amendment protections and could not be justified by the mere fact that the suspect ran at the sight of the police. App. 31–35. Applying a clearly-erroneous standard to the Magistrate's ruling, the trial court upheld the dismissal order. *Id.,* at 2–10.

The Michigan Court of Appeals "reluctantly" affirmed, 157 Mich. App. 181, 184, 403 N. W. 2d 74, 76 (1986), noting that "although we find the result unfortunate, we cannot say that the lower court's ruling was clearly erroneous under the present law or the facts presented." *Id.,* at 183, 403 N. W.

---

[1] The Magistrate did not independently consider whether the codeine pills, if lawfully seized, established probable cause justifying respondent's arrest. The Fourth Amendment issue before us is therefore limited to the police conduct preceding and including respondent's disposal of the packets.

[2] In *Terrell,* a police officer got out of his unmarked car and "gave chase" on foot after allegedly observing the defendant stick his hand in his pocket and run at the sight of the officer. 77 Mich. App., at 678, 259 N. W. 2d, at 188. According to the officer, the defendant ran into an apartment building where the officer observed him drop a clear envelope containing a brown powdery substance. Having determined that the package might contain heroin, the officer arrested the defendant. At a pretrial hearing, the trial court granted the defendant's motion to suppress the envelope and its contents. The Michigan Court of Appeals affirmed, finding that the police "investigatory pursuit" constituted a seizure that was unjustified by any particularized suspicion that the defendant was engaged in criminal activity. *Id.,* at 679–680, 259 N. W. 2d, at 188–189.

2d, at 75. Like the courts below it, the Court of Appeals rested its ruling on state precedents interpreting the Fourth Amendment.[3] The court determined, first, that any "investigatory pursuit" amounts to a seizure under *Terry* v. *Ohio*, 392 U. S. 1 (1968). "As soon as the officers began their pursuit," the court explained, "defendant's freedom was restricted." 157 Mich. App., at 183, 403 N. W. 2d, at 75. The court went on to conclude that respondent's flight from the police was insufficient, by itself, to give rise to the particularized suspicion necessary to justify this kind of seizure. Because "the police saw [respondent] do absolutely nothing illegal nor did they observe other suspicious activity," the court determined that the investigatory pursuit had violated the Fourth Amendment's prohibition against unreasonable seizures. *Id.*, at 184, 403 N. W. 2d, at 76.

---

[3] The Michigan Court of Appeals rested its holding on *People* v. *Terrell*, *supra*, and *People* v. *Shabaz*, 424 Mich. 42, 378 N. W. 2d 451 (1985), cert. dism'd (in view of that respondent's death), 478 U. S. 1017 (1986), both of which were to the effect that the defendant in question had been seized in violation of the Fourth Amendment of the United States Constitution. In *Shabaz*, the Michigan Supreme Court quoted "Michigan's analogous [constitutional] provision," without elaboration, in a footnote following a recitation of the Fourth Amendment. 424 Mich., at 52, n. 4, 378 N. W. 2d, at 455, n. 4. The Supreme Court said nothing to suggest that the Michigan Constitution's seizure provision provided an independent source of relief, and the court's entire analysis rested expressly on the Fourth Amendment and federal cases. Similarly, in *Terrell*, the Michigan Court of Appeals stated that the suppression of evidence and dismissal of charges against the defendant "was soundly based on existing law, state and Federal," but made clear that the scope of the right in question was defined "by the Fourth Amendment's general proscription against unreasonable searches and seizures." 77 Mich. App., at 679, 259 N. W. 2d, at 188, citing *Terry* v. *Ohio*, 392 U. S. 1, 20 (1968). In light of the bases for the courts' decisions in *Shabaz* and *Terrell*, we readily conclude that the decision below likewise rests on the Michigan courts' interpretation of the Federal Constitution and not on any adequate and independent state ground. See *Michigan* v. *Long*, 463 U. S. 1032 (1983). The defense in effect concedes this. See Tr. of Oral Arg. 38–39.

After the Michigan Supreme Court denied petitioner leave to appeal,[4] App. to Pet. for Cert. 9a, petitioner sought review here. We granted a writ of certiorari, 484 U. S. 895 (1987), to consider whether the officers' pursuit of respondent constituted a seizure implicating Fourth Amendment protections, and, if so, whether the act of fleeing, by itself, was sufficient to constitute reasonable suspicion justifying that seizure. Because we conclude that the officers' conduct did not constitute a seizure, we need not reach the second question.

## II

### A

Petitioner argues that the Fourth Amendment is never implicated until an individual stops in response to the police's show of authority. Thus, petitioner would have us rule that a lack of objective and particularized suspicion would not poison police conduct, no matter how coercive, as long as the police did not succeed in actually apprehending the individual. Respondent contends, in sharp contrast, that any and all police "chases" are Fourth Amendment seizures. Respondent would have us rule that the police may never pursue an individual absent a particularized and objective basis for suspecting that he is engaged in criminal activity.

Both petitioner and respondent, it seems to us, in their attempts to fashion a bright-line rule applicable to all investigatory pursuits, have failed to heed this Court's clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account "'all of the circumstances surrounding the incident'" in each individual case. *INS* v. *Delgado*, 466 U. S. 210, 215 (1984), quoting *United States* v. *Mendenhall*, 446 U. S. 544, 554 (1980) (opinion of Stewart, J.). Rather than adopting either rule proposed by the parties and determining that an investigatory pursuit is or is not *necessarily* a

---

[4] Two justices of the Michigan Supreme Court would have granted leave to appeal. See App. to Pet. for Cert. 10a.

seizure under the Fourth Amendment, we adhere to our traditional contextual approach, and determine only that, in this particular case, the police conduct in question did not amount to a seizure.

### B

In *Terry* v. *Ohio*, the Court noted:

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." 392 U. S., at 19, n. 16.

A decade later in *United States* v. *Mendenhall*, Justice Stewart, writing for himself and then JUSTICE REHNQUIST, first transposed this analysis into a test to be applied in determining whether "a person has been 'seized' within the meaning of the Fourth Amendment." 446 U. S., at 554.[5] The test provides that the police can be said to have seized an individual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Ibid.* The Court has since embraced this test. See *INS* v. *Delgado*, 466 U. S., at 215. See also *Florida* v. *Royer*, 460 U. S. 491, 502 (1983) (plurality opinion); *id.*, at 514 (BLACKMUN, J., dissenting).

The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs. Compare *United States* v. *Mendenhall, supra* (consid-

---

[5] Three other Justices, otherwise in the majority, chose not to reach the question whether the federal officers had seized respondent. 446 U. S., at 560 (opinion concurring in part and concurring in the judgment).

ering whether police request to see identification and ticket of individual who stopped upon police's approach constituted seizure), with *INS* v. *Delgado, supra* (considering whether INS "factory survey" conducted while employees continued to move about constituted seizure of entire work force).

While the test is flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police. The test's objective standard— looking to the reasonable man's interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. 3 W. LaFave, Search and Seizure § 9.2(h), pp. 407–408 (2d ed. 1987 and Supp. 1988). This "reasonable person" standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.

## C

Applying the Court's test to the facts of this case, we conclude that respondent was not seized by the police before he discarded the packets containing the controlled substance. Although Officer Peltier referred to the police conduct as a "chase," and the Magistrate who originally dismissed the complaint was impressed by this description,[6] the characterization is not enough, standing alone, to implicate Fourth Amendment protections. Contrary to respondent's assertion that a chase necessarily communicates that detention is

---

[6] At the preliminary hearing, the Magistrate interrupted the State's attorney, who was asserting that the police were simply performing routine patrolling duties, with the following:

"That would be fine until the Officer said we were chasing him in the car, otherwise I would agree with you. My ears picked up when the Officer said that, you know. He said we went around. I asked him why were you chasing him in the car, why were you chasing him and he said because he was running and we wanted to see where he was going." App. 29–30.

intended and imminent, Brief for Respondent 9, the police conduct involved here would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement.[7] The record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement. Tr. of Oral Arg. 2, 11, 20.[8] While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure.[9] Cf. *United States* v. *Knotts*, 460 U. S. 276 (1983)

---

[7] As Officer Peltier explained, the goal of the "chase" was not to capture respondent, but "to see where he was going." *Id.*, at 25. Of course, the subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted. *United States* v. *Mendenhall*, 446 U. S., at 554, n. 6 (opinion of Stewart, J.). See also 3 W. LaFave, Search and Seizure § 9.2(h), p. 407 (2d ed. 1987 and Supp. 1988) (uncommunicated intent of police irrelevant to determination of whether seizure occurred).

[8] The facts of this case are not identical to the facts involved in both *Terrell* and *Shabaz*, upon which the Michigan courts relied in finding a seizure in this case. In both *Terrell* and *Shabaz*, a police officer got out of the car to chase the pedestrian suspect on foot, after which the defendant abandoned the inculpatory evidence. *People* v. *Terrell*, 77 Mich. App., at 678, 259 N. W. 2d, at 188; *People* v. *Shabaz*, 424 Mich., at 47–48, 378 N. W. 2d, at 453. In *Shabaz*, the State appears to have stipulated that the chase, whose clear object was to apprehend the defendant, constituted a seizure. *Id.*, at 52, 378 N. W. 2d, at 455. While no similar stipulation was entered in *Terrell*, the goal of that chase appears to have been equally clear. We, of course, intimate no view as to the federal constitutional correctness of either of those Michigan state-court cases.

[9] The United States, which has submitted a brief as *amicus curiae*, suggests that, in some circumstances, police pursuit "will amount to a stop from the outset or from an early point in the chase, if the police command the person to halt and indicate that he is not free to go." Brief for United States as *Amicus Curiae* 13. Of course, such circumstances are not before

(holding that continuous surveillance on public thoroughfares by visual observation and electronic "beeper" does not constitute seizure); *Florida* v. *Royer*, 460 U. S., at 497 (plurality opinion) (noting that mere approach by law enforcement officers, identified as such, does not constitute seizure). Without more, the police conduct here—a brief acceleration to catch up with respondent, followed by a short drive alongside him—was not "so intimidating" that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business. *INS* v. *Delgado*, 466 U. S., at 216. The police therefore were not required to have "a particularized and objective basis for suspecting [respondent] of criminal activity," in order to pursue him. *United States* v. *Cortez*, 449 U. S. 411, 417–418 (1981).

## III

Because respondent was not unlawfully seized during the initial police pursuit, we conclude that charges against him were improperly dismissed. Accordingly, we reverse the judgment of the Michigan Court of Appeals, and remand the case to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, with whom JUSTICE SCALIA joins, concurring.

It is no bold step to conclude, as the Court does, that the evidence should have been admitted, for respondent's unprovoked flight gave the police ample cause to stop him. The Court instead concentrates on the significance of the chase; and as to that it is fair to interpret its opinion as finding no more than an absence of improper conduct. We would do well to add that, barring the need to inquire about hot pur-

---

us in this case. We therefore leave to another day the determination of the circumstances in which police pursuit could amount to a seizure under the Fourth Amendment.

suit, which is not at issue here, neither "chase" nor "investigative pursuit" need be included in the lexicon of the Fourth Amendment.

A Fourth Amendment seizure occurs when an individual remains in the control of law enforcement officials because he reasonably believes, on the basis of their conduct toward him, that he is not free to go. See, *e. g.*, *INS* v. *Delgado*, 466 U. S. 210, 215 (1984); *United States* v. *Mendenhall*, 446 U. S. 544, 554 (1980) (opinion of Stewart, J.). The case before us presented an opportunity to consider whether even an unmistakable show of authority can result in the seizure of a person who attempts to elude apprehension and who discloses contraband or other incriminating evidence before he is ultimately detained. It is at least plausible to say that whether or not the officers' conduct communicates to a person a reasonable belief that they intend to apprehend him, such conduct does not implicate Fourth Amendment protections until it achieves a restraining effect. The Court's opinion does not foreclose this holding, and I concur.