**UNITED STATES of America**

v.

**Amilcar QUINTANA–LEDEZMA.**

**Crim. No. 90–0489.**

United States District Court,
District of Columbia.

Jan. 9, 1991.

Michael McCarthy, Bowie, Md., for defendant.

Patricia Haynes, Asst. U.S. Atty., Washington, D.C., for U.S.

## MEMORANDUM AND ORDER

GESELL, District Judge.

The defendant, a citizen of Panama who has lived in this country for two years, moves to suppress crack cocaine seized from his bag by officers interdicting passengers on interstate buses which pause at the local bus station. Gerald Crispino, an Immigration and Naturalization Service Special Agent attached to the Metropolitan Police Department's Narcotics Interdiction Unit, opened defendant's bag while defendant, en route from New York to North Carolina, was in his seat on the bus at about 5:50 a.m. on October 11, 1990. There were apparently 14 passengers and four officers on the bus at the time. Only moments before searching defendant's bag, Crispino had seized and removed another bag from the bus, and he along with other officers apparently then handcuffed and arrested a woman who had been seated near that bag and led her past defendant's seat.[1]

No other facts have been established to the Court's satisfaction after a hearing at which Crispino and the defendant were the only witnesses. Neither of the men testified with sufficient credibility to enable the

---

1. It is undisputed that Crispino opened and searched defendant's bag. It was Crispino's "guess" that there were 15 passengers on the bus prior to the removal of the woman. Crispino named three officers other than himself who boarded the bus, and the complaint indicates that at least one other officer was on the scene.

As to the use of handcuffs, Crispino testified he could not recall whether the woman was handcuffed while still on the bus, but he acknowledged that was the standard practice. Defendant testified that the woman was handcuffed on the bus.

Court to set out with any confidence a factual account of what happened. Defendant portrayed himself in false fashion. He pretended not to understand the simplest English, refused to answer except through an interpreter, and professed total lack of understanding of what had happened on the bus. But unfortunately, Crispino's testimony was equally unreliable; in fact, it was transparently unworthy of belief. He was often evasive and unresponsive. He presented totally inconsistent statements.[2] He appeared to have little appreciation of his duty to present the truth. His demeanor was almost mocking and quite unlike the responsible testimony normally offered by MPD officers.

■ Thus the United States failed to meet its burden, see *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971), of showing grounds for a warrantless search of defendant, and the police conduct must be deemed violative of the Fourth Amendment.[3] The motion to suppress is hereby granted, and any and all evidence obtained as a result of the seizure of defendant's bag is suppressed.

The Court's experience with this never-ending stream of drug interdiction cases continues to suggest that the ability of judges to evaluate the reliability of testimony would be greatly enhanced if officers taped their encounters with bus and train passengers. Such an approach might help mend the uneasy state of affairs within this Circuit over the reliability of District Court findings and the constitutionality of police interdiction activities.

A status conference is set for January 18, 1991, at 9:00 a.m. in Courtroom No. 6. At that time, the United States shall indicate how it proposes to proceed.

SO ORDERED.

---

**2.** For example, Crispino initially testified that the officers' purpose was to identify and seize abandoned luggage. However, his own subsequent testimony made clear that he himself also sought to search luggage that was *not* abandoned. Also, Crispino initially testified that he did not know the details of the seizure of the first bag and the subsequent arrest of the woman. Subsequently, however, Crispino was able to recall that he was fully involved in that seizure and arrest.

**3.** Specifically, the United States failed to prove that defendant was not seized, i.e. that there was no police physical force or show of authority that would have indicated to a reasonable, innocent person that he was not free to leave, see *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889 (1968); *Michigan v. Chesternut*, 486 U.S. 567, 576, 108 S.Ct. 1975, 1981, 100 L.Ed.2d 565 (1988); *Gomez v. Turner*, 672 F.2d 134, 141 (D.C.Cir.1982); *United States v. Lloyd*, 868 F.2d 447, 450 (D.C.Cir.1989), particularly because in this case there was a clear display of police authority, i.e. the handcuffing, arrest and removal of a fellow passenger, shortly before defendant's bag was searched.

Nor was there any showing of reasonable suspicion to justify a seizure of defendant or a search of his bag. See *Terry v. Ohio, supra.* Crispino testified he became suspicious when he saw defendant stare straight ahead while all other passengers were looking out the window at the woman being led away by police. The fact that defendant failed to look out the window is not enough.

Finally, in light of Crispino's lack of credibility, there was no showing that defendant voluntarily consented to the search and thus created an intervening act of free will sufficient to purge the taint of the unlawful seizure. See *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Battista,* 876 F.2d 201, 206 (D.C.Cir.1989).

By contrast, defendant admitted ownership of the bag (which was in his lap) thus meeting his burden of showing a reasonable expectation of privacy in the area searched and the items seized. See *United States v. Salvucci,* 448 U.S. 83, 92–93, 100 S.Ct. 2547, 2553–54, 65 L.Ed.2d 619 (1980).