986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jennifer FAGAN, Defendant-Appellant.
 No. 92-2159.
 United States Court of Appeals, Tenth Circuit.
 March 4, 1993.
 
 Before LOGAN, HOLLOWAY and SEYMOUR, Circuit Judges.
 ORDER AND JUDGMENT*
 SEYMOUR, Circuit Judge.
 
 
 1
 Appellant Jennifer Fagan was charged with possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Ms. Fagan was traveling aboard an Amtrak train from Flagstaff, Arizona to Chicago when Agent Small boarded the train in Albuquerque to question her. Ms. Fagan argued that she was seized without reasonable suspicion and filed a motion to suppress. The motion was denied, and Ms. Fagan entered a conditional guilty plea. She now appeals and we reverse.
 
 
 2
 Acting on a tip from a ticket agent in Los Angeles, Agent Kevin Small obtained the manifest for the train that Ms. Fagan was aboard. The information from Los Angeles concerned separate individuals on the same train. Agent Small noticed Ms. Fagan's name and asked the Albuquerque Amtrak employee about her reservation information. Ms. Fagan had purchased a one-way, cash ticket to Chicago on the day of travel. She gave the Amtrak employee the phone number of a hotel that had no record of her checking out on the day she traveled. When the train arrived in Albuquerque, Agent Small learned from an attendant that Ms. Fagan had carried all her luggage into her room with her.
 
 
 3
 Agent Small encountered Ms. Fagan when she was half in and half out of her room, standing in the doorway. The sleeping compartment itself was seven feet long and eight feet high. The upper berth was down, reducing the height in the room to about five feet. The hallway in the common area of the car was two and a half feet wide.
 
 
 4
 Agent Small approached Ms. Fagan and, after producing his badge, asked if he could talk with her. She agreed. Agent Small then asked a series of questions regarding Ms. Fagan's travel plans, asking to see her ticket and identification. He explained about the trouble the Drug Enforcement Agency had with drug couriers coming through Albuquerque on their way to the East. He asked Ms. Fagan if she had any narcotics. She said no. Then he asked her if he could search her luggage. He testified that she said "sure," but in his own report notes he did not so indicate. A tape recording he made of the interview is inconclusive on this point. Ms. Fagan opened the bags herself and shifted some items. Agent Small asked her if he could search the bag. In response, Ms. Fagan backed away from her bag. Agent Small searched the bag and discovered marijuana.
 
 
 5
 We review the district court's factual findings under the clearly erroneous standard. United States v. Bloom, 975 F.2d 1447, 1450 (10th Cir.1992). The " 'ultimate issue of whether a seizure occurred is a question of law' " to be reviewed de novo. Id. at 1450 (quoting United States v. Ward, 961 F.2d 1526, 1534 (10th Cir.1992)).
 
 
 6
 This court has delineated three general types of encounters between law enforcement officials and citizens: (1) consensual encounters not implementing the Fourth Amendment; (2) investigative detentions which are seizures implicating the Fourth Amendment and must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause. Ward, 961 F.2d at 1529; Bloom, 975 F.2d at 1450-51. The government contends the district court correctly found that Agent Small's encounter with Ms. Fagan was consensual.
 
 
 7
 In determining whether a seizure has occurred, we examine several factors including the totality of the circumstances of the encounter and the police officer's conduct. A significant inquiry is "[w]hether taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " Florida v. Bostick, 111 S.Ct. 2382, 2387 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)).
 
 
 8
 The nature of a law enforcement official confronting a citizen in a private room of a train is critical in determining whether Ms. Fagan was seized. Bloom, 975 F.2d at 1453; Ward, 961 F.2d at 1531-32. "An important distinction ... is that [Ms. Fagan] was not in an open public place ... within view of persons other than law enforcement officers." Ward, 961 F.2d at 1531. "[W]hether an encounter occurs in the public view is particularly significant." Id. "In this Fourth Amendment inquiry, it is relevant that an individual traveling in a private train roomette has a higher expectation of privacy than an individual traveling in a public passenger car of the train." Id. at 1531-32.
 
 
 9
 Agent Small began questioning Ms. Fagan while she was standing half in and half out of her room. As we emphasized in Ward, where a person is alone in a private setting and is approached by police to be questioned, he or she is more likely to feel like a "specific object of the officers' inquiry," whereas in a public setting, "the reasonable innocent person is less likely to feel singled out." Id. at 1532. This is especially true where, as here, Agent Small did not inform Ms. Fagan that she had a right to refuse to answer questions or otherwise terminate the encounter. Bloom, 975 F.2d at 1454-1455; Ward, 961 F.2d at 1533. As we stated in Bloom, "directly incriminating questions in a nonpublic setting would tend to communicate to a reasonable person that, as the specific target of the agents' investigation, [s]he was unable to terminate the encounter." 975 F.2d at 1454.
 
 
 10
 On this record, we conclude that the law enforcement encounter with Ms. Fagan amounted to an investigative detention for which reasonable suspicion of criminal activity was a prerequisite. See United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 30 (1968); Bloom, 975 F.2d at 1456. The government has conceded that Agent Small did not have reasonable suspicion sufficient to justify an investigative detention of Ms. Fagan. Appellee's Br. at 16; Plaintiff's Response to Motions, doc. 12 at 8-9. We agree that these facts are "wholly consistent with innocent travel," Bloom, 975 F.2d at 1458, and do not amount to reasonable suspicion.
 
 
 11
 Finally, the search of Ms. Fagan's luggage suffers from the taint of the prior unconstitutional seizure. Because she was in an investigative detention and was not free to leave, the resulting search of her luggage was not consensual and is therefore tainted by the prior Fourth Amendment violation.
 
 
 12
 Following our decisions in Ward and Bloom, and after carefully reviewing the facts and circumstances in this case, we REVERSE the district court's order denying Ms. Fagan's motion to suppress and VACATE Ms. Fagan's sentence.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3