989 F.2d 502
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Dale STEELE, Defendant-Appellant.
 92-2191.
 United States Court of Appeals, Seventh Circuit.
 Argued March 3, 1993.
Decided March 16, 1993.
 
 Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Jr., Senior Circuit Judge.
 
 Order
 
 1
 The only question in this direct criminal appeal is whether a reasonable person in defendant's position would have felt free to walk away from the police who were questioning him. If yes, then his consent to search is valid; if no, then the weapon the police found must be suppressed. Florida v. Bostick, 111 S.Ct. 2382 (1991). The district judge found that defendant Steele gave a valid consent. 782 F.Supp. 1301 (S.D.Ind.1992). Unless this conclusion is clearly erroneous, we must affirm the ensuing judgment of conviction. United States v. Espinosa-Alvarez, 839 F.2d 1201, 1205 (7th Cir.1987).
 
 
 2
 Steele's argument is simple: a police officer told him to "Stop right there", and he did. Cf. California v. Hodari D., 111 S.Ct. 1547 (1991). The officer testified that he would have prevented Steele from leaving. A reasonable person in his position, Steele submits, would have concluded that he was indeed obliged to remain until the officer told him he could go.
 
 
 3
 The facts narrated by the officers (Steele did not testify at the pretrial hearing) are these: As they drove in a marked patrol car past the Playhouse in Kokomo, Indiana, at 9:15 p.m. on a Sunday evening, a time when the establishment was closed, they observed Steele standing in the parking lot to the east of the building. Steele walked around the southeast corner--that is, away from the road, and toward the rear of the building, which had been the subject of recent burglaries. Deciding to investigate, the officers turned around and pulled into the parking lot to the east of the building. As they did so, Steel reappeared around the corner and walked slowly toward the patrol car. Officer Phillips testified: "Mr. Steele turned and started walking toward my patrol car. ... He was walking towards me. I stuck my head out of the car door and told him to stop in front of my vehicle." Officers Phillips and Archer then got out of their car. They did not draw their guns or take any other act suggesting a detention. After a few minutes' conversation--during which Steele did not attempt to leave or ask whether he could do so--Steele permitted the officers to look into a pouch on his hip. The pouch contained a gun. As Steele had a prior felony conviction, his possession of the gun violated 18 U.S.C. § 922(g)(1).
 
 
 4
 The strongest support for the district court's conclusion that a reasonable person in Steele's position would have believed that he was free to depart is the way in which the encounter began. The parking lot is to the north and east of the Playhouse. Like the rest of the property, it is unfenced. Steele had walked around the southeast corner of the building and was heading west when the patrol car pulled into the parking lot. Steele then retraced his steps and approached the police car. This implies that he was approaching the officers, initiating the conversation. A reasonable person who initiates a conversation feels free to break it off. That the officers meant to detain Steele matters not, when that intention was not communicated. Michigan v. Chesternut, 486 U.S. 567, 575 n. 7 (1988).
 
 
 5
 Now of course police planning to detain a person are likely to communicate that resolve, if only by body language and tone of voice. A reasonable person might have understood a stern "Stop right there" as forbidding departure. But Steele did not testify that the officer used a commanding tone or that he felt obliged to remain. Indeed, Steele did not testify at all, despite the use immunity provided by Simmons v. United States, 390 U.S. 377 (1968). A reasonable person in Steele's position could have heard the words in context to mean "come no closer" rather than "don't leave." A person approaching a police car at night may be asked to keep his distance, so that he cannot menace officers whose movements inside the car are restricted. The police did not block Steele's way. He could have retreated around the corner to the west, or walked due east to the road, without approaching their car. The district judge's conclusion that a reasonable initiator of the conversation with officers Phillips and Archer would have felt free to leave is not clearly erroneous. See Bostick, 111 S.Ct. at 2387; INS v. Delgado, 466 U.S. 210, 218 (1984).
 
 AFFIRMED