State of Wisconsin, Plaintiff-Respondent,
v.
James R. Walz, Defendant-Appellant.
No. 03-2003-FT.
Court of Appeals of Wisconsin.
Opinion Filed: April 29, 2004.
¶1 DEININGER, P.J.[1]
James Walz appeals a judgment convicting him of operating a motor vehicle while under the influence of an intoxicant (OMVWI), first offense. He claims the trial court erred in denying his motion to suppress evidence gathered following his stop and arrest. Walz contends that the arresting officer did not have a reasonable suspicion that Walz was engaged in criminal activity when the officer stopped him. We disagree and affirm the appealed judgment.

BACKGROUND
¶2 A state trooper arrested and cited Walz for OMVWI, first offense. Walz pled not guilty and moved to suppress evidence gathered following his stop and arrest. The following facts, largely undisputed, are taken from the trooper's testimony at the suppression hearing.
¶3 The trooper was conducting a traffic stop near the city of Boscobel at about 1:00 a.m. when he saw a black pickup truck traveling toward the city. After completing the stop, the trooper drove into Boscobel and saw the same truck stopped at an intersection. When the trooper passed the intersection, the truck turned and traveled in the trooper's direction, following his patrol car, and it then turned off. The truck soon reappeared, however, and the trooper testified that he pulled onto the shoulder "just to see where it was going to go, what it was going to do." He saw the truck turn away from the trooper's direction of travel and head back toward Boscobel, and the trooper made a U-turn to follow it.
¶4 The truck made several more turns and began "going back in the direction from where it had just come from." The truck eventually pulled over and parked, and the driver and a passenger got out of the truck and began walking away from it. The trooper testified that he had activated neither the patrol car's red and blue lights nor its siren. The trooper parked his patrol behind the truck in order to "make contact with [the driver] to make sure that there was nothing either bad, or they weren't lost, or anything going on." When the trooper parked behind the truck, the driver turned and approached the driver's side of the patrol car as the trooper was getting out.
¶5 The driver, later identified as Walz, called out "Hey, Bull" as he approached the trooper's car, apparently mistaking the trooper for a sheriff's deputy having that nickname. The trooper testified that he asked Walz "if he was lost, or if he needed any help." Walz responded that he was going to his mother's house across the street. The trooper testified that, "[a]s soon as he started talking to me ... I immediately could smell the odor, a strong odor, of intoxicating beverage coming from" Walz. The trooper also noticed what he described as Walz's slurred speech and glassy eyes. He then asked Walz for a driver's license, which Walz did not have with him. The trooper also asked Walz if he had been drinking, to which Walz replied that he had had "a few beers."
¶6 Suspecting Walz had been driving while intoxicated, the trooper then asked Walz to wait by his truck while he set up his vehicle for the performance of field sobriety tests.[2] After Walz performed these tests, the trooper arrested him for OMVWI and Walz subsequently submitted to a breath test for alcohol concentration.
¶7 The trooper was the only witness to testify at the hearing. The trooper acknowledged that, while he was following the truck, he observed no traffic or equipment violations, and that, when it stopped, the truck was legally parked. He testified that he had followed the truck because "I didn't know whether the driver was lost. I didn't know why they were driving around apparently in a circle."
¶8 The trial court denied Walz's motion to suppress evidence. The court found that nothing the trooper had done caused Walz to pull over and park, and that Walz's contact with the trooper was voluntary and self-initiated, given that Walz had turned, approached the patrol car and extended a greeting before the trooper had asked him any questions. The court concluded, therefore, that no police "stop" occurred until after the trooper had detected an odor of alcohol and observed other signs of Walz's possible intoxication, thereby creating a reasonable suspicion of illegal activity (OMVWI).[3]
¶9 A jury subsequently found Walz guilty of OMVWI. He appeals the judgment of conviction, challenging only the legality of his initial stop and detention.

ANALYSIS
¶10 Walz contends that by following him through Boscobel, pulling up and stopping behind him after he parked his truck, and then asking him questions, the trooper "stopped and detained" him, absent any reasonable suspicion of criminal activity, in violation of his Fourth Amendment rights. See Terry v. Ohio, 392 U.S. 1 (1968); WIS. STAT. § 968.24. He argues that the totality of the trooper's conduct must lead to a conclusion that a reasonable person in Walz's position would not have believed that he was free to disregard the trooper's questions and go on his way. We disagree.
¶11 The question whether police conduct violated the constitutional guarantee against unreasonable seizures is a question of "constitutional fact." State v. Griffith, 2000 WI 72, ¶23, 236 Wis. 2d 48, 613 N.W.2d 72. On review of the denial of a suppression motion, we will uphold the trial court's findings of "historical fact" unless they are clearly erroneous. Id. Whether the facts lead to a conclusion that someone was unreasonably seized within the meaning of the Fourth Amendment, however, presents a question of law which we decide de novo. Id. We follow U. S. Supreme Court Fourth Amendment precedents when interpreting the Wisconsin Constitution's parallel provision. State v. Williams, 2002 WI 94, ¶18 n.5, 255 Wis. 2d 1, 646 N.W.2d 834.[4]
¶12 Before making an investigative stop, a law enforcement officer must reasonably conclude, in light of his or her experience, that some kind of criminal activity has occurred or is taking place. Terry, 392 U.S. at 30. Such "reasonable suspicion" must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the stop.]" Id. at 21. However, a stop or seizure occurs only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Id. at n.16; Williams, 255 Wis. 2d 1, ¶20.
¶13 Not all interactions between the police and the public involve "stops" or "seizures." The Fourth Amendment does not prohibit police from engaging in voluntary or consensual contacts with citizens. See United States v. Mendenhall, 446 U.S. 544, 553-54 (1980). Accordingly, a law enforcement officer does not violate the Fourth Amendment by approaching an individual in a public place and asking questions. Florida v. Royer, 460 U.S. 491, 497 (1983). An officer is entitled to approach and question someone as long as the questions, the circumstances and the officer's behavior do not convey that compliance with the requests is required. Florida v. Bostick, 501 U.S. 429, 435-36 (1991). The person approached, of course, need not answer any questions and, as long as he or she remains free to walk away, there has been no intrusion on liberty requiring a particularized and objective justification under the Fourth Amendment. See Mendenhall, 446 U.S. at 554; Williams, 255 Wis. 2d 1, ¶¶21-22.
¶14 Walz claims that, when considered together with the trooper's following Walz's truck through Boscobel and pulling up behind it when Walz parked, the trooper's questioning of Walz constituted a stop or detention for Fourth Amendment purposes. Specifically, he argues:
A reasonable person in [Walz]'s position would have believed that he was not free to leave. He was followed for several blocks. The Trooper pulled in behind his truck. As he was walking to his destination, the Trooper asked him a question. A reasonable person in [Walz]'s position would believe that he is required to answer the Trooper's question. And, he did.
... The Trooper was showing his authority by pulling in behind [Walz]'s parked truck and then initiating contact with [Walz] by asking him if everything was alright.
¶15 First, we take issue with some of the factual premises of Walz's argument. By pointing to the fact that he "was followed for several blocks," Walz implies that he was aware that the trooper's patrol car was behind him as he doubled back through Boscobel in his truck. There is nothing in the record to support such an inference. Walz did not testify, and the first indication in the trooper's testimony of Walz's awareness of the trooper's presence was when, according to the trooper, Walz turned and approached the patrol car, saying "Hey, Bull." Given that there is no evidence that Walz was aware that the trooper had been following his truck, we cannot conclude that it had any coercive effect on Walz after he and the trooper made contact.
¶16 We note as well that Walz's assertions overlook, or at least minimize, the fact that the trial court found that Walz initiated contact with the trooper before the trooper posed any questions. Thus, for the purposes of our analysis, the relevant circumstances begin at the point when, after Walz had parked and left his truck and was walking away, the trooper parked behind the truck. Walz then turned and approached the patrol car, issuing a greeting. We have no difficulty concluding that Walz was not detained by the trooper when the trooper began asking Walz questions.[5] We conclude that no detention or seizure of Walz occurred until the trooper asked him to wait by his truck, as a prelude to the administration of field sobriety tests. We also agree with the trial court, and Walz does not dispute, that the trooper had, at that point, obtained sufficient information to reasonably suspect Walz had committed OMVWI.
¶17 The Wisconsin Supreme Court has held that questioning by law enforcement officers, standing alone, does not constitute a seizure. Williams, 255 Wis. 2d 1, ¶22. Unless the conditions surrounding the questioning "`are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.'" Id. (quoting I.N.S. v. Delgado, 466 U.S. 210, 216 (1984). Facts or factors that may permit a court to conclude that a defendant was intimidated by police into remaining and responding include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554.
¶18 None of these circumstances are present here. The trooper never actuated the patrol car's red and blue lights or siren, and neither did he draw a weapon, physically touch Walz, or issue any commands prior to making sufficient observations to warrant detaining Walz. The present facts are thus not unlike those in Michigan v. Chesternut, 486 U.S. 567 (1988). There, a man turned and ran away from a marked police cruiser after seeing it nearby. Id. at 569. The officers in the car followed the man "to see where he was going," quickly caught up to him and drove alongside him for a short distance. Id. The Court specifically noted that the record did not reflect that the police had activated a siren or flashers, commanded the defendant to halt, displayed any weapons, or operated the patrol car in an aggressive manner to block or control the defendant's direction or speed. Id. at 575.
¶19 The Court concluded in Chesternut that the officers' conduct, accelerating to catch up to and driving alongside the man on a public street, did not constitute a seizure or "show of authority." Id. at 572-73. The trooper's actions in this case were arguably less intrusive than those of the officers in Chesternut. A reasonable person in Walz's position simply could not have concluded that he was not free to continue walking across the street to his mother's house simply because a state trooper had parked behind his truck. Even the trooper's initial question following Walz's greeting (inquiring whether everything was "alright") was not intimidating in the least, and it would not prompt a reasonable person to believe that he was not free to disregard the question and proceed on his way.
¶20 Because we conclude Walz was not stopped or detained until such time as the trooper had acquired a reasonable suspicion of illegal activity, we need not inquire into the reasonableness of the trooper's earlier actions in deciding to follow Walz's truck, park behind it and inquire about Walz's welfare. "`As long as the person to whom the questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particular and objective justification.'" Williams, 255 Wis. 2d 1, ¶22 (quoting Mendenhall, 446 U.S. at 554). Accordingly, the trial court did not err in denying Walz's motion to suppress evidence.

CONCLUSION
¶21 For the reasons discussed above, we affirm the appealed judgment.
By the Court.  Judgment affirmed.
NOTES
[1] This is an expedited appeal under WIS. STAT. RULE 809.17 (2001-02). This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The patrol car was equipped with a video camera, and a videotape of the sobriety tests was introduced at the suppression hearing.
[3] Although Walz's motion to suppress also challenged the existence of probable cause to arrest, he does not pursue that issue on appeal.
[4] The wording of the search and seizure section of the Wisconsin Constitution is nearly identical to that of the Fourth Amendment. The State provision reads, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated ...." WIS. CONST. art. I, § 11.
[5] We do not wish to suggest that we would reach a different conclusion if Walz had been aware of being followed, or if the trooper had asked a question before Walz turned, approached and greeted him. We simply note that the record supports neither circumstance, and our analysis must take the record as it stands, not as Walz might wish it to be.