HENRY, Chief Judge,
concurring.
I write separately to note that although we do not decide the issue in the main opinion, in my view, the Bradfords were seized, albeit reasonably.
*1197 A Fourth Amendment seizure occurs when a police officer “restrains [one’s] liberty.” Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The deputies claim, and the district court agreed, that the test for whether an action constitutes a Fourth Amendment seizure is more specific than the simple “restraint of liberty” — rather, they claim, it is whether the plaintiffs felt “free to leave.” Aple’s Br. at 17-21; Aplt’s App. at 409-11 (Dist. Ct. Order at 9-11). The district court held, “A person is seized within the meaning of the Fourth Amendment when a reasonable person would believe that he or she is not free to leave.... [NJothing in the record indicates to this court that the Bradfords were not free to leave, the touchstone for a Fourth Amendment seizure.” Aplt’s App. at 409-10, 411 (Dist. Ct. Order at 9-10, 11). The court reasoned that not only were the Bradfords free to leave, they were reportedly ordered to do just that.
However I do not agree that the inquiry is that simple. Seizure does not necessarily imply any physical restraint. See, e.g., United States v. Place, 462 U.S. 696, 712 n. 1, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (Brennan, J. concurring) (noting that although the seizure at issue in Terry was physical restraint, “the Court acknowledged ... that ‘seizures’ may occur irrespective of the imposition of actual physical restraint.”). Under Terry, “Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a ‘seizure’ has occurred.” 392 U.S. at 20 n. 16, 88 S.Ct. 1868 (emphasis added). Ordering the Bradfords to leave and then physically removing them from the scene no doubt restrains their liberty, if the one thing they want to do— and otherwise would have the liberty to do — is to remain on the premises.
We touched on this issue in Roska ex rel. Roska v. Peterson, 328 F.3d 1230 (10th Cir.2003), addressing the narrow question before the panel, but the “free to leave” inquiry set forth in that case is not always the end of the matter. While it may have been the end of the matter as to the way Roska was argued, read any more broadly than that, the language would be at direct odds with this language from Bostick, which held that whether an individual is “free to leave” is not always dispositive:
The state court erred, however, in focusing on whether Bostick was “free to leave” rather than on the principle that those words were intended to capture. When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter....
.... Bostick’s freedom of movement was restricted by a factor independent of police conduct — i.e., by his being a passenger on a bus. Accordingly, the “free to leave” analysis on which Bostick relies is inapplicable. In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers’ requests or otherwise terminate the encounter. This formulation follows logically from prior cases and breaks no new ground. We have said before that the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would “have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.”
*1198 Florida v. Bostick, 501 U.S. 429, 435-37, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Michigan v. Chestemut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988))(emphasis added).
This broad formulation of “the principle that th[e] words [‘free to leave’] were intended to capture,” might very well cover a case like the Bradfords’. Taking into account all the surrounding circumstances, the Bradfords would not have felt free to ignore the police presence and go about the business of staying in front of their son’s home — public property. Therefore, it is my view that they were seized under Bostick.
Even if a seizure did occur, as I believe it did, the deputies’ actions did not violate the Bradfords’ Fourth Amendment rights since that seizure was reasonable.