FILED
United States Court of Appeals
Tenth Circuit

May 18, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENzTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

ALFREDO ARAGONES,

Defendant-Appellee.

No. 11-2142
(D.C. No. 1:10-CR-02453-MV-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

After a police officer found Alfredo Aragones with a sawed-off rifle, he

was arrested for being a felon unlawfully in possession of a firearm. In response

to the charge, Mr. Aragones moved to suppress evidence of the gun, claiming it

was discovered during an unconstitutional seizure. The district court agreed and

granted the motion. The government now appeals that decision, and we reverse.

---

[*] This order is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Many details are disputed, but on appeal the parties have agreed to the following essential facts as found by the district court and they suffice to resolve this matter.

As Mr. Aragones was walking along a street in a high crime neighborhood of Albuquerque one day, a police officer approached in a patrol car. The officer noticed Mr. Aragones had a large tattoo on the back of his head, one "consistent with gang affiliation." D. Ct. Op. at 2. As soon as Mr. Aragones saw the officer, he turned abruptly away and approached the back door of a nearby house. The outer wrought iron door was closed, but the interior door was open, allowing Mr. Aragones to see into the home. Mr. Aragones didn't verbally communicate with the residents of the house, though they could see him; instead, he stood at the door, looking in. The officer exited his car and asked Mr. Aragones to approach him, but Mr. Aragones ignored the request. As the officer began to walk toward him, Mr. Aragones looked left and right in a manner the officer described as "consistent with . . . an individual that's looking for an exit . . . his best exit route to run." *Id.* At that point, the officer also noticed Mr. Aragones had his hand in his pocket. Fearing Mr. Aragones might have a weapon, the officer asked him to remove his hand, but again Mr. Aragones did not respond. The officer then continued to approach (possibly with his gun drawn and pointed at the ground) and this time ordered Mr. Aragones to remove his hand from his pocket. Still again, Mr. Aragones did not comply. The officer then grabbed Mr. Aragones's

wrist, handcuffed him, and discovered the sawed-off rifle in his trousers.  All this happened quickly:  the district court found that Mr. Aragones had been standing at the door for only a matter of seconds when the officer grabbed his wrist.

In approaching the motion to suppress, the district court began by holding that for purposes of the Fourth Amendment the officer "seized" Mr. Aragones at the moment he ordered Mr. Aragones to remove his hand from his pocket.  The court reasoned that the seizure began then because by then a reasonable person would not have believed he was "free to leave."  *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).  As the Supreme Court has explained, however, the "not free to leave" test "states a *necessary*, but not a *sufficient*, condition for seizure." *California v. Hodari D.*, 499 U.S. 621, 628 (1991) (emphasis in original).  In the absence of actual physical restraint, an assertion of authority, like the oral direction the officer gave here, cannot constitute a seizure unless the suspect actually *submits* to it.  *See id*. at 629; *see also United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010).  Because Mr. Aragones didn't submit to the officer's order to remove his hand from his pocket, he was *not* seized at that moment.  *See United States v. Harris*, 313 F.3d 1228, 1234-35 (10th Cir. 2002) (a suspect who failed to submit to an officer's assertion of authority — including an order to remove his hands from his pockets — was not seized until the officer used physical force); *United States v. Martin*, 613 F.3d 1295, 1300-01 (10th Cir. 2010).  This is not to question Mr. Aragones was soon "seized" for Fourth Amendment

- 3 -

purposes, only to say it didn't occur at the moment he disregarded the officer's direction, as the district court held.

Even overlooking this problem, however, a larger one exists. An Albuquerque public nuisance ordinance prohibits "[e]ntering upon any private property and looking into any occupied dwelling without the consent of the occupant or owner of the dwelling." Albuquerque Ord. § 12-2-21(B). No one challenges the constitutionality of this law. And no one disputes that by the time the officer issued his (disregarded) command to Mr. Aragones he already knew of Mr. Aragones's (1) gang tattoo; (2) presence in a high crime area; (3) abrupt move away from the officer as soon as he saw him; (4) glancing about in a manner consistent with an attempt to find a route to flee; and, (5) approach to the home's back door without conversing with the residents visible inside. In light of these facts, a reasonable officer could have suspected that Mr. Aragones wasn't a welcome guest and did not have consent to look into the home. And reasonable suspicion of criminal activity like this is enough to permit an officer to effect a brief investigative detention to determine whether or not a legal violation is, in fact, taking place. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.").

This conclusion is compelled by the Supreme Court's leading cases on investigatory detentions. In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the defendant fled when he saw officers in a police car look in his direction. The Court held that, while this behavior wasn't "necessarily indicative of wrongdoing," it was "certainly suggestive of such" and its ambiguity permitted the officers to stop the defendant briefly to investigate. *Id*. at 124. In *Terry*, two men met on a street corner and then repeatedly paced up and down the street looking into a particular store window. Although they did nothing illegal, because a reasonable officer could have suspected them of "casing" the store for "a stick-up," "further investigation" by means of a brief detention was legally permissible. 392 U.S. at 6, 22. Precisely the same must be said in this case. Whether or not Mr. Aragones had actually done anything illegal, a reasonable officer could have suspected him of violating the law, and this is enough to justify an investigative detention. The most fundamental rule of law is that like cases should be decided alike, and this one is materially indistinguishable from *Wardlow* and *Terry*.

In reaching its contrary holding, the district court emphasized that Mr. Aragones's conduct was consistent with innocent behavior. Mr. Aragones's abrupt turn could have arisen from "a simple interest in avoiding contact with the police." D. Ct. Op. at 17. And his conduct at the door was "consistent with the most benign of conduct, including a visit to a friend's house or calling upon a

neighbor for assistance." *Id*. at 19. Because of this, the district court held, the officer should have waited longer to rule out the possibility that Mr. Aragones was a welcome guest at the home before seizing him. *Id*.

The problem is that conduct giving rise to reasonable suspicion sufficient to support an investigative detention can be — and often is — consistent with innocent behavior. An officer is *not* required by the Fourth Amendment to "rule out the possibility of innocent conduct" before performing a brief stop to investigate the situation. *United States v. Arvizu*, 534 U.S. 266, 277 (2002); *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011). Even in *Wardlow* and *Terry*, "the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." *Wardlow*, 528 U.S. at 125. All that is required for an investigative detention consistent with the Fourth Amendment is "some minimal level of objective justification," based on the totality of the circumstances, for suspecting that criminal activity "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989) (quotations omitted). This standard "is a less demanding standard than probable cause and requires a showing *considerably less* than preponderance of the evidence." *Wardlow*, 528 U.S. at 123 (emphasis added). And that standard was met here no less than it was in *Wardlow* and *Terry*.

The district court's order granting Mr. Aragones's motion to suppress is reversed and the case is remanded for further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT

PER CURIAM