J-S37018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DOUGLAS ENGELBERT | |
| Appellant | No. 1248 WDA 2015 |

Appeal from the Judgment of Sentence July 15, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001764-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

CONCURRING STATEMENT BY LAZARUS, J.:          **FILED JUNE 17, 2016**

I join the majority because I agree that Corporal Grenci had reasonable suspicion to believe that Engelbert was trafficking a controlled substance.

However, I write separately to note my disagreement with the suppression court's reliance on Corporal Grenci's conclusion that Engelbert's act of inquiring whether he was "free to go" confirmed that he had "prior contact in these kinds of circumstances."  Trial Court Opinion, 12/1/14, at 3. As Corporal Grenci testified, "[f]ree to go is very important in criminal interdiction work . . . the normal innocent motoring public doesn't know the significance of free to go, but he did."  Suppression Hearing, 11/24/14, at 20.

In **United States v. Mendenhall**, 466 U.S. 544 (1980), Justice Stewart noted that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." **Id.** at 554. This test was adopted by a majority of the Court in later cases, **see Michigan v. Chesternut**, 486 U.S. 567, 573 (1988); **INS v. Delgado**, 466 U.S. 210, 215 (1984). Accordingly, any law-abiding citizen who studied the Fourth Amendment in a high school civics class would know that asking whether he or she is free to leave is a reasonable question to ask an officer as their interaction winds down.

Separate from their constitutional import, these words may simply be a polite request from a citizen who wants to end an encounter with an authority figure and continue on his or her way.

Therefore, I distance myself from the suppression court's decision to assign any weight to the fact that Engelbert asked if he was free to go.

GANTMAN, President Judge, joins this concurring statement.