104 F.3d 352
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Warren SHEFFIELD, also known as Warren Sheftall, also known
as Keith Taylor, Defendant-Appellant.
 No. 96-1279.
 United States Court of Appeals, Second Circuit.
 Oct. 31, 1996.
 
 Appearing for Appellant: Stuart J. Grossman, Forest Hills, New York.
 Appearing for Appellee: Samuel Buell, Assistant United States Attorney, Eastern District of New York, Brooklyn, New York.
 Before OAKES, VAN GRAAFEILAND and WINTER, Circuit Judges.
 
 SUMMARY ORDER
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was submitted.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Warren Sheffield appeals from his conviction and sentence following a conditional plea of guilty entered before Judge Glasser. In his plea, Sheffield reserved his right to appeal from the denial of a suppression motion. Sheffield was convicted of the sole count in the indictment brought against him: possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). He was sentenced to 46 months imprisonment, three years supervised release, and a $50 special assessment.
 
 
 4
 Sheffield raises two issues on appeal: (i) whether the district court erred in failing to suppress the gun found by police in Sheffield's waistband; and (ii) whether the district court erroneously calculated his base offense level under the U.S. Sentencing Guidelines. We find both arguments meritless.
 
 
 5
 New York Police Department Officer William Fisher testified that he and two fellow officers, while in plain clothes, observed Sheffield and two friends inside the lobby of a Queens building on the night of April 6, 1996. Fisher testified that as he and his partners entered the lobby, Sheffield reached out to open an inner door to the lobby to allow Fisher to enter. Fisher claims that he then saw a large bulge protruding from appellant's waistband. According to Fisher, he identified himself as a police officer, pointed to Sheffield's waistband and said, "I hope that's a beeper." Sheffield lifted his shirt and displayed a beeper, but, as he did so, Fisher saw the butt of a gun behind the beeper. Fisher then grabbed Sheffield while one of his partners recovered the gun.
 
 
 6
 Sheffield and Steven Brown, one of two friends who accompanied Sheffield that evening, both testified at the suppression hearing and gave an entirely different version of events. According to Sheffield and Brown, the police entered the building, searched around the lobby, and then searched each of the three men in succession, with Sheffield being the last one searched. Sheffield denied having a beeper or any conversation relating to a beeper.
 
 
 7
 We review the district court's factual findings under a clearly erroneous standard. United States v. Blue, 78 F.3d 56, 59 (2d Cir.1996). Credibility determinations will not be reversed unless the reviewing court reaches "a definite and firm conviction that a mistake has been committed." United States v. Villegas, 928 F.2d 512, 517 (2d Cir.) (citation and internal quotation marks omitted), cert. denied, 502 U.S. 843 (1991). Judge Glasser observed Officer Fisher testify and found his account more credible than Sheffield's and Brown's testimony. Judge Glasser noted, among other factors, that "[t]he defendant's credibility was not enhanced by his assertion that he did not know that the area in which he had lived virtually all his life was one plagued by crime or that there had been a number of arrests over the years in his neighborhood.... When pressed on the point he did acknowledge that the area was dangerous and that he told the police that is why he had the gun." The district court similarly found the testimony of Brown, a long-time friend of the appellant who also "feigned ignorance of drug arrests in the area," to be incredible.
 
 
 8
 This credibility determination is self-evidently not clearly erroneous. See also United States v. Reed, 88 F.3d 174, 180 (2d Cir.1996) (" '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous' ") (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985)).
 
 
 9
 Appellant argues that even under the version of events as related by Fisher the search was unconstitutional. This court must review the district court's conclusions of law de novo. United States v. Walker, 7 F.3d 26, 29 (2d Cir.1993), cert. denied, 510 U.S. 1169 (1994). The applicable principles of law involved in this encounter are set forth in United States v. Glover, 957 F.2d 1004 (2d Cir.1992). Glover describes three levels of encounters between police and citizens, each implicating the Fourth Amendment to different degrees. The first type is a consensual encounter in which an individual willingly agrees to speak with police. Such contact can be initiated by the police without any objective level of suspicion and does not constitute a Fourth Amendment "seizure." Id. at 1008. The second type is a "limited investigative stop," pursuant to Terry v. Ohio, 392 U.S. 1 (1968), and must be justified by reasonable suspicion of criminal activity based on articulable facts. Glover, 957 F.2d at 1008. Finally, there is a full arrest, which must be supported by probable cause. Id.
 
 
 10
 Crediting Fisher's account, the district court ruled that the initial encounter was consensual, thus requiring no prerequisite level of suspicion. Judge Glasser further ruled that no seizure (not even a limited investigative stop) had taken place at the point in time when the gun became visible. Once the gun handle became visible, there was probable cause for a full arrest and the plain view exception to the Fourth Amendment was satisfied. See United States v. Scopo, 19 F.3d 777, 782 (2d Cir.1994) (exception to warrant requirement satisfied where butt of firearm was in plain view). In concluding that there was no seizure prior to the sighting of the gun, the district court relied on the absence of such relevant factors as the showing of a weapon by the officers or the physical touching of the appellant by the officers. See Glover, 957 F.2d at 1008 (listing relevant factors to determine whether Fourth Amendment "seizure" occurred). Viewing the totality of the circumstances, Judge Glasser concluded that a reasonably innocent person would have believed he was free to leave, satisfying the test in Michigan v. Chesternut, 486 U.S. 567, 573 (1988).
 
 
 11
 We agree with the district court's analysis. We note, however, that Judge Glasser did not discuss the significance of Fisher's comment to Sheffield--"I hope that's a beeper"--which caused Sheffield to lift his shirt and expose the gun handle. In these circumstances, Fisher's statement was not an order that Sheffield identify the object or surrender it. We therefore agree that there was no Terry-type seizure prior to the exposure of the gun handle, see Florida v. Bostick, 501 U.S. 429, 434 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."), and that there was no Fourth Amendment violation during this encounter.
 
 
 12
 Sheffield's second argument is that the district court, in determining whether a prior offense could be used in calculating appellant's base offense level for sentencing purposes, erred by examining the indictment underlying the prior conviction. Under United States Sentencing Guidelines § 2K2.1(a)(4)(A), a defendant's base offense level is 20 if the defendant has one prior felony conviction for either a crime of violence or "a controlled substance offense." The term "controlled substance offense" is defined in U.S.S.G. § 4B1.2 and specifies a range of narcotics-related offenses, including possession of a controlled substance with intent to distribute. It does not include mere possession.
 
 
 13
 Sheffield's prior conviction was for violating New York Penal Law § 220.16, to which he pled guilty. Section 220.16 consists of thirteen subsections, some of which criminalize simple possession and others that criminalize possession with intent to distribute. Sheffield's prior conviction did not specify a particular subsection. The sentencing court generally must look only to the fact of conviction and the statutory definition of the prior offense to determine whether such conduct qualifies the defendant for sentence enhancement. However, we have held that where a statute governs both conduct that qualifies for a sentence enhancement and conduct that does not, then "the charging instrument and jury instructions may be consulted to determine whether the prior conviction was imposed for conduct that qualifies for enhancement purposes." United States v. Palmer, 68 F.3d 52, 56 (2d Cir.1995).
 
 
 14
 The instant case falls squarely within the rule of Palmer. In order to determine whether Sheffield's prior conviction qualified for a sentence enhancement, the district court found that Sheffield had pled guilty to Count One of the indictment, in which he was charged with "possess[ion][of] cocaine, with intent to sell it." Judge Glasser properly consulted this underlying indictment as well as the pre-sentence report, which stated that appellant had pled guilty to the offense charged in Count One.
 
 
 15
 We therefore affirm.