**UNITED STATES of America, Plaintiff,**

v.

**Adams MORGAN, a.k.a. Morgan Adams, a.k.a. Claremont McKenzie, a.k.a. Mark Warthon, Defendant.**

Crim. No. 91–0003.

United States District Court,
District of Columbia.

March 19, 1991.

Erik P. Christian, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Ted Kavrukov, Arlington, Va., for defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

These matters are before the Court on defendant Claremont McKenzie's [1] Motion to Suppress Tangible Evidence, Motion for Severance of Offenses, Motion to Strike Surplusage, and Motion *in Limine.* The government opposes each of these motions.

For the reasons set forth below, the Court denies the defendant's motion to suppress; grants the defendant's motion *in limine;* grants, in part, the defendant's motion for severance; and grants, in part, the defendant's motion to strike surplusage.

## *Facts*

This Court heard evidence on the defendant's motions on March 12, 1990. At the motions hearing, Officer Carter Adams testified on behalf of the government that he and other officers responded to a radio run for a burglary in progress at 3700 9th Street, S.E., Apartment 721, Washington, D.C. Officer Adams testified that he, Officer Seth Holmes and Officer Raymond Mead proceeded on the elevator to the seventh floor where apartment 721 was located. When the elevator doors opened, the officers observed two individuals in the hallway, near apartment 721. Officer Adams testified they saw one man tampering with the door handle of apartment 721. The defendant, he testified, was standing a few feet away from the other man.

The officers approached both men and attempted to investigate the situation. Officer Seth Holmes testified that he told the unidentified man to step away from the door. According to the officers, the defendant then turned and fled down the hallway. Officer Raymond Mead and Officer Adams pursued the defendant.

Officer Adams, who was leading the chase, stated that as he was running, the defendant reached into his waistband and attempted to pull out a handgun. However, the gun fell from his grasp onto the floor, where it later was retrieved by Officer Adams.

The defendant continued to flee from the officers. According to Officer Adams, he ran into the stairwell and up to the eighth floor. Officer Adams testified that halfway down the eighth floor hallway, the defendant ducked into an alcove and removed his leather jacket. Officer Adams

1. The defendant was identified in the Indictment as Adams Morgan. However, there is no evidence linking either the name Adams Morgan or Morgan Adams to the defendant. *See*

*infra,* at 901. The Court, therefore, shall refer to the defendant by his true name, Claremont McKenzie, throughout this memorandum.

stated that he and Officer Mead seized and arrested the defendant on the eighth floor, and recovered his jacket. Officer Adams then returned to the seventh floor to retrieve the gun dropped by the defendant.

According to the officers, a search of the defendant and his jacket, recovered approximately twenty-four rocks of crack cocaine from one of the jacket's inside pockets.

The defendant also testified at the motions hearing. He stated that on the night in question, he was at 3700 9th Street, S.E. in an apartment where he formerly resided. He stated that he went downstairs to apartment 720 to visit a man named "Johnny". According to defense witnesses, apartment 720 and apartment 721 are adjacent apartments, separated by approximately 35 feet. The defendant testified that he spoke to the owner of apartment 720 and discovered that Johnny was not in. As he stepped out of the doorway of apartment 720, the defendant testified that he saw the police officers approaching the unidentified man in front of apartment 721. He stated that he turned and started to walk away when one officer shouted at him. He said that he could see over his shoulder one of the officers pushing the unidentified man against the wall and placing handcuffs on him.

The defendant stated that he got scared and started to run. Two officers, he testified, pursued him to the eighth floor where they seized him, beat him and placed him under arrest.

On March 13, 1990 the defendant submitted a Motion to Reopen Hearing on the Motion to Suppress Tangible Evidence on the basis that new evidence should be presented to the Court. In the motion to reopen, the defendant alleged that after the March 12, 1990 motions hearing defendant's counsel was allowed, apparently for the first time, to listen to a tape recording of the radio run involved in this case. The defendant further alleged that the tape recording which his counsel listened to contained no report of a burglary in progress at 3700 9th Street, S.E., Apartment 721, Washington, D.C. Instead, the tape revealed a 911 call describing a domestic disturbance at apartment 721, followed by a radio run for a domestic dispute between a girlfriend and her boyfriend at that location. The defense argued that the tape eliminated any basis the police might have had for stopping the defendant outside the apartment.

The Court granted the defendant's motion to reopen. A hearing was held on March 14, 1990. The Court listened to a series of tape recordings involving the incident leading to the defendant's arrest. The tapes recorded three 911 calls, two from the female occupant of apartment 721 reporting that a man was trying to break into her apartment, and one from a security guard in the apartment building reporting a woman in apartment 721 being harassed. The tapes also recorded two radio runs broadcast to police units. The first radio run informed the officers of a boyfriend/girlfriend dispute at apartment 721, but told the officers to standby. In the second radio run, the dispatcher stated that the boyfriend/girlfriend dispute had been reclassified to a burglary I in progress.

After listening to the recordings, this Court ruled orally on the defendant's motions. The Court denied the motion to suppress, and granted, in part, both the defendant's motion to sever offenses and the defendant's motion to strike surplusage. The Court also granted a motion *in limine* to exclude a statement by the defendant, which defense counsel submitted to the Court at the reopened hearing. The Court's findings and rulings on these motions are set forth fully in the following memorandum.

## Analysis

I. Defendant's Motion to Suppress Tangible Evidence

The Fourth Amendment of the Constitution protects individuals from unreasonable search and seizure. In deciding the defendant's motion to suppress, the Court must determine whether the defendant was "seized" when he fled from police officers who, in turn, pursued him, and if so, whether the seizure of the defendant was unrea-

sonable, thereby violating the defendant's fourth amendment rights.

The defendant contends that he was seized by the police "at the earliest, when he was ordered to halt in the stairway, and, at the latest when the police officer began the chase." The government claims that, "at the very least", the defendant's initial encounter with the police was merely an investigative stop justified by the circumstances of the encounter. The government also contends that the circumstances of the initial encounter between the officers and Mr. McKenzie justify characterizing it as a mere contact which did not implicate the fourth amendment.

■ A "seizure" under the fourth amendment takes place "when (an) officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen". *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). In determining whether a particular defendant was seized, the Court must examine the totality of the circumstances. *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). "The question becomes whether or not 'a reasonable person would have believed that he was not free to leave.'" *United States v. Baskin*, 886 F.2d 383, 386 (D.C.Cir.1989), quoting *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ Under the circumstances presented here, the Court concludes that defendant McKenzie was seized when he fled and officers Adams and Mead pursued him down the seventh floor hallway of the apartment building. The officers, upon arriving in the hallway, found the defendant standing near a man who was tampering with the door of apartment 721. They took steps to apprehend the man tampering with the door, and ordered the defendant to cooperate. When the defendant fled in-

stead of following their commands, two officers pursued him. A reasonable person under these circumstances would not have felt free to leave and calmly go about his business.

The situation here is distinguishable from the facts in *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), where the Supreme Court found that a police pursuit of a person did not constitute a seizure under the fourth amendment. In *Chesternut*, police officers on routine patrol observed a man get out of a car and join defendant Chesternut on a street corner. When the defendant saw the police cruiser he fled around the corner. The police followed in the patrol car "to see where he was going." The officers drove alongside Chesternut a short distance and observed him pull several packets from his pocket and discard them. One officer got out to examine the packets which contained narcotics. Chesternut, who had stopped a few paces away, was arrested.

Stating that the designation of a police "chase" on its own was insufficient to constitute a seizure, the Court found that the circumstances surrounding Chesternut's arrest did not constitute a seizure because a reasonable person in Chesternut's position would not have felt his liberty had been restrained. *Id.* at 574–575, 108 S.Ct. at 1980. However, the Court specifically refused to consider whether, under other circumstances, a police pursuit would amount to a seizure. *Id.* at 575, n. 9, 108 S.Ct. at 1980, n. 9.

■ Several facts distinguish this case from *Chesternut*. First, the police pursuit immediately followed a verbal command to the defendant indicating that the police wanted to speak with him.[2] Second, the officers had begun to apprehend the other individual in the hallway when the defendant fled. Third, the officer's pursuit was on foot[3], and the officers testified that

**2.** Officer Adams testified that he and the other officers "initiated an investigation" of both the defendant and the man tampering with the door. The officer could not recall his exact words to the defendant. However, on cross-examination, he admitted that, as the officers ap-

proached, he gave the defendant some sort of command to come towards him.

**3.** The Court does not mean to suggest that all police pursuits on foot amount to a seizure. However, a pursuit on foot is less ambiguously

they intended on stopping the defendant to investigate whether he was involved in an attempted burglary.[4]

Determining that the defendant was seized when he fled and the officers pursued him, does not end the Court's inquiry under fourth amendment analysis, however. The fourth amendment's protections extend only to unreasonable searches and seizures. It remains, whether or not this was an unreasonable seizure of the defendant.

In *Terry v. Ohio*, the Supreme Court stated that there is "'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1967), quoting *Camara v. Municipal Court*, 387 U.S. 523, 534–535, 536–537, 87 S.Ct. 1727, 1733–1734, 1734–1735, 18 L.Ed.2d 930 (1967). The Court continued, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.*

Here, the government points to several facts in arguing that the police officers' initial pursuit of the defendant was justified. According to the government, "the totality of the information known to the officers, including defendant's location in front of the apartment upon the officers' arrival after receiving the radio run (for a burglary I in progress), and the defendant's subsequent flight during the course of the interview, constituted sufficient articulable suspicion to warrant an investigative stop." Government's Opposition to the

Defendant's Motion to Suppress Tangible Evidence, at 3, ¶ 3.

■ The Court finds that these facts taken with others justify the officer's pursuit of defendant McKenzie. The officers responded to a radio run for a burglary in progress at apartment 721.[5] Upon arrival, they observed a man tampering with the door handle of that apartment. One officer testified that the man had a twig he was using in his hand. The defendant stood only a few feet away. The officers attempted to investigate. They told the unidentified man to step away from the door and commanded the defendant to come nearer. Instead, the defendant fled. This combination of circumstances was sufficient to give the police an articulable suspicion that criminal activity was afoot. The officers acted reasonably in pursuing the defendant with the intention of stopping him and investigating his relationship to what appeared to be an attempted burglary of apartment 721.

■ When the officers learned the defendant was armed, reasonable suspicion matured into probable cause giving the basis for the defendant's arrest. The seizure of the defendant's gun and the search of the defendant's jacket and consequent seizure of the narcotics found in a pocket were justified incident to the arrest.

## II. Defendant's Motion for Severance of Counts

■ The defendant seeks to sever Count Two, which charges the defendant with possession of a firearm by a convicted felon, from the remaining two counts.

a chase which may result in the pursued being "caught" or "apprehended", than an "investigatory pursuit" by officers in a car driving alongside the individual being pursued.

4. "Of course, the subjective intent of the officers is relevant to the assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted." *Chesternut*, 486 U.S. at 575, n. 7, 108 S.Ct. at 1980, n. 7. In this instance, it is reasonable to assume that the officers' intent to stop McKenzie was conveyed

to the defendant when he observed the officers apprehend the man tampering with the door of apartment 721. In *Chesternut*, the officers testified that the goal of the chase was not to capture the defendant but "to see where he was going." *Id.*

5. Although the first radio run broadcast a girlfriend/boyfriend dispute, the dispatcher in the second radio run stated that the call had been changed to a burglary I in progress. Thus, at a minimum, the officers who responded were alerted to either possibility.

The government opposes severance. It argues that this Court can cure any prejudice to the defendant through a cautionary instruction coupled with a stipulation as to the defendant's prior conviction which makes no mention of the nature of the offense. The government contends that this circuit and others have endorsed such a solution. See *United States v. Daniels*, 770 F.2d 1111, 1114 (D.C.Cir.1985).

This Court concludes that no instruction could cure the prejudice to the defendant by allowing Count Two to be presented to the jury along with Counts One and Three. Indeed, the Court can see no basis for including this charge as a separate count except to introduce prejudicial testimony of a serious felony offense where the government would not otherwise be able to present such evidence.[6] The charge should be treated as a possible enhancement at sentencing in the event that the defendant is convicted of either remaining count. Therefore, the Court will allow the government to treat the charge as an enhancement if the defendant is convicted. Or, Count Two may be tried separately to the Court at the conclusion of a jury trial on Counts One and Three. The defendant has indicated he does not object to this procedure.

The Court, however, will not allow the defendant to be tried on all three counts simultaneously. Contrary to the government's suggestion, the Court believes that this is the procedure advocated by the Court of Appeals in *Daniels*. *See id.* at 1118–1119. In any event, it is clear under *Daniels* that a determination of the severance motion rests in the trial court's discretion. *Id.* at 1117.

### III. Defendant's Motion to Strike Surplusage

 The Court grants, in part, the defendant's motion to strike surplusage. The Indictment identifies the defendant as Adams Morgan, also known as Morgan Adams, also known as Claremont McKenzie, also known as Mark Warthon. The defendant admits that his true name is Claremont McKenzie. Officer Adams testified that the defendant gave the name Mark Warthon when he was arrested. Therefore, these names are relevant to the government's case and may be used to identify the defendant. However, there is no evidence to support the allegation that the defendant also goes by the names Adams Morgan and Morgan Adams. Consequently, the names Adams Morgan and Morgan Adams shall be struck from the Indictment, and the government may not refer to the defendant by either name.

### IV. Defendant's Motion *in Limine*

 At the reopened motions hearing held on March 14, 1990, defense counsel submitted to the Court a motion *in limine* to exclude a statement allegedly made by the defendant after he was taken into custody. During the conference between counsel for the government and counsel for the defendant which took place after the March 12, 1990 motions hearing, defense counsel learned for the first time, of a statement made by the defendant after he was arrested concerning ownership of the leather jacket recovered by the police. The government alleged that the defendant admitted that the leather jacket in which the narcotics were found belonged to him. Because the defense was unaware of the statement prior to the hearing of the suppression motion, the Court allowed the motion *in limine*.

Upon questioning from the Court, counsel for the government admitted that defendant made the statement in response to an officer's question, after he was placed under arrest, but before he was informed of his rights. Therefore, the statement is inadmissible and must be suppressed. *Mi-*

---

**6.** If the defendant were tried on Count One, possession with intent to distribute five grams or more of crack, and Count Three, use or carrying a gun during and in aid of a drug trafficking crime, in a separate trial, the government would not be allowed to introduce evidence of the defendant's prior conviction except for impeachment. The defendant has indicated that he does not expect to testify if tried solely on Counts One and Three, thus, impeachment would be unlikely.

*randa v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### Conclusion

For the reasons stated above the Court denies the defendant McKenzie's motion to suppress tangible evidence, grants the defendant's motion *in limine,* grants, in part, the defendant's motion to sever offenses, and grants, in part, the defendant's motion to strike surplusage.