Carolyn **JACKSON, et al., Plaintiffs,**

v.

**CITY OF ALBANY, GEORGIA, et al. Defendants.**

No. 1:94–CV–11–2(WLS).

United States District Court, M.D. Georgia, Albany Division.

Aug. 20, 1998.

John Michael Brown, Augusta, GA, Rodney M. Keys, Albany, GA, Alfonso Pearl, Atlanta, GA, for Carolyn Jackson, as Next Friend to Zenovia Cole, as heir to the Estate of Henry Lee Lemon Cole, Belma Washington Walker, plaintiffs.

Al Grieshaber, Jr., Albany, GA, for City of Albany, Georgia, City of Albany Police Department, Roynell ("Rocky") Stone, Earnest Adams, Bobby Hooper, Ricky Hicks, defendants.

Carl A. Bryant, Albany, GA, Al Grieshaber, Jr., Albany, GA, for Washington Long, defendant.

Kermit S. Dorough, Jr., Albany, GA, for William Bill Marshall, defendant.

Johnny Wayne Knight, Albany, GA, Lewis R. Lamb, Albany, GA, for Dewey Heath, Jr., defendant.

## ORDER

SANDS, District Judge.

Plaintiffs filed their complaint on February 8, 1994, alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986, and various state law torts. Presently before the Court is Defendants City of Albany and Roynell Stone's Motion for Summary Judgment.

## BACKGROUND

The facts the parties can agree on are as follows: On March 13, 1992, Defendant Roynell Stone responded to a dispatch concerning a possible drug dealer at 730 Byron Road, Albany. The suspect was described as a black male wearing khaki pants, a blue shirt, and a cap, and armed with a .357 Magnum. Stone found Henry Lee Lemon Cole, albeit at 723 Byron Road, who apparently matched this description, and approached him. Cole walked away from Stone, and Stone told him to stop. Cole did not respond to this command, but continued to move away from Stone, although it is disputed whether he walked or ran away. Stone pushed Cole to the ground, but Cole promptly got up and fled again. Defendant William Marshall joined the chase, and eventually tackled Cole to the ground. Marshall lay across Cole to keep him from escaping, and Stone lay across Cole's legs. Stone was able to cuff Cole's left hand, but his right hand remained beneath him. Two other officers who had arrived helped Stone remove and handcuff Cole's right arm. At some point in time, Cole died. An autopsy revealed that Cole died of asphyxiation due to neck compression.

Plaintiff Zenovia Cole is the minor daughter of decedent; Plaintiff Carolyn Jackson is Zenovia Cole's mother and next friend; and Plaintiff Belma Washington Walker is the administratrix of the decedent's estate.

## DISCUSSION

Defendants are entitled to summary judgment if there are no issues of material fact. For issues upon which the plaintiffs bear the burden of proof, the defendants may show merely an absence of evidence; however, for issues upon which the defendants bear the burden, they must affirmatively show the absence of an issue of material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). Once the defendants have met this burden, the plaintiffs may not rely on allegations

or denials, but must offer specific facts creating an issue. Fed.R.Civ.P. 56(e).

*Excessive Force*[1]

Defendants claim that Stone did not violate Cole's constitutional rights, and if he did, he is entitled to qualified immunity. The facts in this case are so unclear that the Court cannot possibly hold that a reasonable fact finder could not find that Stone violated Cole's Fourth Amendment right to be free from excessive force.

 Any force used in the course of an arrest, stop or other seizure must be "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The factors to be weighed in making this determination include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, at 396, 109 S.Ct. 1865. First, there is a critical question of fact as to the nature of force Stone used; the defendants consistently deny he used a weapon, but the plaintiffs have eyewitness and medical evidence which would support a conclusion that Stone hit Cole with a nightstick.

As to whether this alleged force was excessive, if viewed in the light most favorable to the plaintiffs, the testimonial evidence shows a question of fact as to whether Cole committed any crime or could have reasonably been believed to have committed a crime. Furthermore, even if Stone reasonably thought Cole was loitering and prowling, this is not a particularly severe crime. The evidence also shows that Cole retreated from Stone, and, therefore, there is a question of fact as to whether he posed any immediate threat to Stone or others. Finally, although walking away from a police officer may be evidence of non-cooperation, this factor alone, given the nature of the facts viewed most favorably to the plaintiffs, is insufficient to grant summary judgment. In weighing the *Graham* factors, the Court finds there is a question of fact on the issue of whether Stone violated Cole's constitutional rights.

*Unlawful Arrest*

Plaintiffs also assert a claim of unlawful arrest in violation of the Fourth Amendment, contending that Stone lacked probable cause to arrest Cole and should have obtained a warrant before doing so. The defendants agree that Stone lacked probable cause to arrest Cole when he arrived at the scene; however, they then assert that Stone acquired probable cause to arrest Cole for loitering. Both parties have so seriously clouded this issue that the Court has had to take significant amounts of time to clarify the heart of the matter.

 First, the Court finds that Cole was not under arrest at any time on March 13, 1992.[2] Plaintiffs argue that an arrest occurs when a person is not free to leave, and that to restrain a person in such a manner, police officers must have probable cause; this is a misstatement of the law. A *seizure* occurs where a reasonable person would feel that he was not free to leave. *Terry v. State of Ohio*, 392 U.S. 1,

---

1. Although the plaintiffs raised multiple constitutional claims in their complaint, the defendants only address the Fourth Amendment claims in their Motion for Summary Judgment. However, both the Eleventh Circuit and the United States Supreme Court have held that "all cases involving allegations of the use of excessive force in an arrest, an investigatory stop, or any other seizure, should be analyzed under the Fourth Amendment" not the Fourteenth Amendment. *Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Therefore, summary judgment is appropriate to the plaintiffs' Fourteenth Amendment claims. Furthermore, the plaintiffs have offered nothing in support of their Eighth and First Amendment claims, and a cursory review of the law would indicate that these claims are inappropriate. For these reasons, the plaintiffs' Eighth and First Amendment claims are dismissed as well.

2. The defendants' explanation that Stone acquired probable cause to arrest Cole for loitering is not even remotely plausible; however, it is also irrelevant as the Court finds Stone's actions were justified without probable cause to arrest.

88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a seizure is an arrest or merely an investigatory stop depends on the extent of the intrusion given the totality of the circumstances, and police officers are not required to merely walk away when they lack probable cause to arrest. *U.S. v. Blackman,* 66 F.3d 1572 (11th Cir.1995), *cert. denied* 517 U.S. 1126, 116 S.Ct. 1365, 134 L.Ed.2d 531 (1996); *Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991).

█ Furthermore, an officer may take reasonable steps to effectuate an investigatory stop without crossing the line into an arrest, including physically restraining the subject of an investigatory stop to prevent his escape. *U.S. v. Hastamorir,* 881 F.2d 1551 (11th Cir.1989); *U.S. v. Dotson,* 49 F.3d 227 (6th Cir.1995), *cert. denied* 516 U.S. 848, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995); *U.S. v. Weaver,* 8 F.3d 1240 (7th Cir.1993); *U.S. v. Jones,* 973 F.2d 928 (D.C.Cir.1992), reh'g granted and opinion vacated in part on other grounds.

█ Assuming that Cole was seized on March 13, 1992, the Court finds that Stone had reasonable suspicion sufficient to conduct an investigatory stop. First, the dispatch Stone received described a suspect matching Cole's description, at an address not too remote from the one at which he was found, possibly engaged in criminal behavior and possibly armed. Plaintiffs cite a few cases in support of their argument, all of which are inapplicable. First, notwithstanding that *Archer v. State,* 217 Ga.App. 257, 456 S.E.2d 754 (1995) is a state case, it involved a radio dispatch which merely provided a description of the plaintiff, without any indication of criminal activity. This was held insufficient to uphold a search of the plaintiff. Here, on the other hand, the radio dispatch explicitly cited possible criminal activity by the suspect described. In fact, a radio dispatch

describing criminal activity has been held sufficient to create reasonable suspicion regarding a person whom the responding officers did not observe engaged in any criminal activity, but merely wished to question. *U.S. v. Morgan,* 759 F.Supp. 896 (D.D.C.1991).

█ Furthermore, as restraining a suspect does not turn an investigatory stop into an arrest, the fact that Stone chased Cole and even knocked him to the ground does not then create a need for probable cause. The Court finds that nothing Stone did went beyond the effectuation of the investigatory stop, and there was no need for probable cause.[3] For these reasons, the plaintiffs' unreasonable seizure claim shall be dismissed.

*Qualified Immunity*

█ Under the doctrine of qualified immunity,

> "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether qualified immunity is available as a defense is a question of law for the court. *Ansley v. Heinrich,* 925 F.2d 1339, 1348 (11th Cir.1991). This means that, even if Stone did violate Cole's constitutional rights, he may be entitled to immunity.

█ The clearly established law is that the use of excessive force in executing an arrest or other stop is a constitutional violation. *Graham v. Connor,* 490 U.S. at 394, 109 S.Ct. 1865; *Cottrell v. Caldwell,* 85 F.3d 1480 (11th Cir.1996). Again, how-

---

**3.** The Court wishes to make very clear that the plaintiffs do indeed have a significant and legitimate case for excessive force. Although the two issues are inherently entwined, the Court wishes to keep the claim of excessive force separate from the claim of unreasonable seizure. If Stone did in fact approach Cole

and begin beating him with a nightstick, these facts do not negate the reasonableness of the seizure itself, for it has nothing to do with whether Stone had the requisite suspicion to conduct an investigation; rather, these facts are evidence of excessive force used to carry out the otherwise reasonable seizure.

ever, the facts are so unclear as to make summary judgment on the grounds of qualified immunity impossible. Defendants argue that Stone is entitled to qualified immunity because he "never used a weapon against Cole," yet this fact is hotly disputed by the plaintiffs. The Court must view the evidence in the light most favorable to the plaintiffs; the Court, therefore, assumes that Stone followed Cole into his backyard, and when Cole refused to submit, beat him with his nightstick. The question for the Court is whether a reasonable officer would find this use of force lawful. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Even under the facts according to the defendants, when Stone first allegedly hit Cole, he had not committed a serious crime. Nor did Cole pose a danger to anyone, even if Stone reasonably believed he was carrying a gun, for Cole was walking away from Stone. Furthermore, there is a genuine issue as to whether Cole was attempting to evade Stone. The Court finds that a reasonable officer could not believe that such actions were lawful under the circumstances as alleged by the plaintiffs, and, therefore, Stone is not entitled to qualified immunity. Summary judgment is, therefore, denied on this claim.

*Failure to prevent deadly force*

█ "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441 (11th Cir.1985) (citations omitted). In support of their motion, the defendants offer evidence that Stone was not aware that any other officer had used excessive force on Cole, and did not have the opportunity to prevent any alleged excessive force. Plaintiffs offer no facts in reply, and therefore, fail to meet their Rule 56(e) burden of offering specific facts creating an issue. *See Riley v. Newton,* 94 F.3d 632, 638–639 (11th Cir.1996), *cert. denied* 519 U.S. 1114, 117 S.Ct. 955, 136 L.Ed.2d 842 (1997).

Summary judgment is, therefore, granted on this claim.

*City Policy*

Defendant City of Albany argues that no city policy or custom was responsible for any alleged violation of Cole's constitutional rights, and that there is no evidence of deliberate indifference in training that would give rise to a claim under § 1983.

█ Government entities are not entitled to immunity where a policy or custom is the "moving force" behind the constitutional violation. *Farred v. Hicks,* 915 F.2d 1530, 1532–1533 (11th Cir.1990) (citations omitted.) Plaintiffs must point to the unconstitutional policy and its origins; if the policy is not unconstitutional, however, they must cite more than one instance of constitutional violation to maintain a claim. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Citing a "policy" of inadequate training is one way to do this; in reviewing such a claim, the Court must determine whether the inadequacy could amount to deliberate indifference to constitutional rights. *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Kerr v. City of West Palm Beach,* 875 F.2d 1546 (11th Cir.1989).

█ Plaintiffs argue that the City lacked a policy or training in the use of choke holds, and that this was the cause of Cole's death. This claim does not rise to the level of deliberate indifference required to hold the City liable when viewed in context of the use of force training that was provided to the officers, training the plaintiffs' own expert found did not violate accepted standards. (Katsaris Depo., p. 25–26.) *McQurter v. City of Atlanta, Ga.,* 572 F.Supp. 1401, 1420–21 (N.D.Ga.1983), *appeal dismissed* 724 F.2d 881 (11th Cir. 1984), abrogated on other grounds, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (lack of training in use of choke holds alone not reckless or grossly negligent). Plaintiffs have failed to meet this

high standard, even for purposes of summary judgment; therefore, the defendants motion will be granted as to this claim.

Plaintiffs also argue that the City's policy on warrantless arrests is unconstitutional and that the officers received insufficient training in this area. This argument is based on the assumption that Stone was making an arrest, and that had he been properly trained, Cole would not have died. As noted above, Cole was never placed under arrest, and therefore, the adequacy of the City's policy on warrantless arrests is irrelevant.

■■■ Plaintiffs further argue that the City ratified and adopted the officers' conduct which resulted in Cole's death, making it responsible as well. Plaintiffs cite numerous instances of case law that says the standard for ratification is knowledge and failure to act. For example, in *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496 (11th Cir.1986), the City was held liable for the acts of the officers where there was actual or constructive knowledge of excessive force and evidence that the City had failed to remedy this situation. However, in support of their claim, the plaintiffs merely cite to the fact that Defendant Long allegedly did not investigate Cole's death. The Court is unclear how the awareness of Cole's death created a duty to act *prior* to Cole's death, thereby preventing it. Nor have the plaintiffs alleged prior knowledge of excessive force. The City, therefore, cannot be held responsible under this theory. Accordingly, the Court find that the City is entitled to immunity because no policy or custom was the "moving force" behind the constitutional violation.

### Conspiracy

To state a claim under § 1985(3), the plaintiffs must allege that the defendants 1) conspired for the purpose of depriving any person or class of persons of the equal enjoyment of rights; and 2) committed or caused to be committed any act in furtherance of the object of the conspiracy, thereby injuring another or depriving him of his rights. *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Those who neglect or refuse to prevent such action may also be held liable. 42 U.S.C. § 1986. The purpose of these sections is to prevent race-based animus. *United Broth. of Carpenters and Joiners of America, Local 610, AFL—CIO v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

Plaintiffs made no allegations concerning conspiracy or the purpose of any conspiracy in either their complaint, their amended complaint or their motion for summary judgment. Instead, the plaintiffs merely cited to § 1985 and stated that various defendants were "involved in the conspiracy." Such conclusory arguments are insufficient to withstand summary judgment. *Kadlec v. Illinois Bell Tel. Co.*, 407 F.2d 624 (7th Cir.1969), *cert. denied* 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95 (1969).

In fact, it is not until their response to the defendants' motion for summary judgment that the plaintiffs make any attempt to assemble facts in support of their conspiracy claim. Although this is poor pleading practice, and the Court has the discretion to reject the argument, it will nevertheless consider it.

■■■ The plaintiffs argue that the defendants conspired to treat certain predominantly black areas of the city as "known drug areas," and, in carrying out this conspiracy, violated Cole's rights. Specifically, the plaintiffs argue that the defendants took the actions they did only because the 700 block of Byron Road was designated a "known drug area." The Court agrees that the practice of stopping a person merely because they are in a "bad" area is unconscionable; however, that is not the case here. The evidence is quite clear that, unlike *State v. Banks*, 223 Ga.App. 838, 479 S.E.2d 168 (1996), Stone was not on Byron Road merely because it was a "known drug area," but rather was responding to a specific complaint and to a specific description of the suspect. Furthermore, unlike *Leslie v. Ingram*, 786

F.2d 1533, 1536 (11th Cir.1986), where the defendant made racially offensive remarks, there is no evidence that Stone's actions were racially motivated. Together these facts negate any conceivable issue of conspiracy on the part of the defendants; accordingly, the plaintiffs' § 1985 and § 1986 claims will be dismissed.

*Sovereign Immunity*

Defendants argue that the City is entitled to sovereign immunity, and the plaintiffs agree to the extent that the City is not insured. Government entities are not entitled to immunity where a policy or custom is the "moving force" behind the constitutional violation. *Farred v. Hicks,* 915 F.2d 1530, 1532–1533 (11th Cir.1990) (citations omitted.) As noted above, there is no genuine issue as to whether any of the City's policies were deficient. Therefore, the defendants' motion is granted as to this claim.

■ Defendants also argue that Stone is entitled to sovereign immunity in his official capacity. Stone is, in fact, entitled to immunity unless he acted with actual malice. Ga. Const., Art. I, Sec. II, ¶ IX. *Merrow v. Hawkins,* 266 Ga. 390, 467 S.E.2d 336 (1996). Plaintiffs, of course, argue that he did.

■ Malice requires a showing of deliberate intent to do wrong. *Id.,* at 337. According to the evidence in favor of the plaintiffs, Stone ran into Cole's backyard and, when he failed to respond, began hitting Cole with his nightstick. Whether ultimately persuasive or not, these facts could certainly support a finding that Stone maliciously intended to use excessive force on Cole. Therefore, summary judgment will be denied Stone on sovereign immunity grounds.

Defendants' Motion for Summary Judgment (# 61) is **DENIED–IN–PART** as to Stone in both his official and individual capacities. Defendants' motion is **GRANTED–IN–PART** as to all the plaintiffs' claims except that of excessive force.

SO ORDERED.