# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNPUBLISHED

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                      No. 99-4119

MARIO STRACHAN,
            *Defendant-Appellant.*


UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                      No. 99-4426

MARIO KIKIVARAKIS,
            *Defendant-Appellant.*


Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-98-835-DWS)

Argued: November 3, 2000

Decided: March 2, 2001

Before WILLIAMS and TRAXLER, Circuit Judges, and
Frank J. MAGILL, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Debra Yvonne Chapman, Columbia, South Carolina, for Appellant Strachan; Robert Allen Ratliff, Cincinnati, Ohio, for Appellant Kikivarakis. Jane Barrett Taylor, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Mario Strachan and Mario Kikivarakis challenge their convictions for conspiracy to possess and distribute cocaine and possession with intent to distribute cocaine, and the resulting sentences. We affirm in part, vacate in part, and remand for the resentencing of Strachan.

I.

On August 26, 1998, two sheriff's deputies in Morgan County, Georgia, stopped a Ford Taurus for a series of traffic violations. The driver of the Taurus was Strachan and the sole passenger was Denver Pratt. The deputies observed that Strachan and Pratt were acting nervous and providing conflicting answers to questions. After he was issued a ticket and informed that he could leave, Strachan inquired about a storm off the Atlantic coast. The deputy chatted with Strachan about the storm and then asked Strachan for permission to search the vehicle. Strachan refused and the other deputy then walked his drug dog around the car. The actions of the dog indicated that drugs were in the trunk, a search ensued, and the deputies discovered a duffle bag containing approximately fifteen kilograms of cocaine. Pratt and Strachan were arrested and transported to the Morgan County Sheriff's

Department where they were interviewed by agents from the Drug Enforcement Administration.

Pratt and Strachan told the agents that they were delivering the cocaine to Theotis Brannon, a resident of Columbia, South Carolina. Pratt and Strachan agreed to call Brannon and attempt to make a controlled delivery of the cocaine in Columbia. At the appointed time, Brannon and Kikivarakis arrived to meet Pratt and Strachan. The men gathered at the trunk of the vehicle and Kikivarakis retrieved the duffle bag containing the cocaine. Police officers surrounded the vehicle and placed Brannon and Kikivarakis under arrest.

Count One of the grand jury's indictment charged the four with conspiracy to possess and distribute cocaine. *See* 21 U.S.C.A. §§ 841(a)(1), 846 (West 1999). Count Two charged Kikivarakis and Brannon with possession with intent to distribute. A jury found Strachan guilty on Count One and Kikivarakis guilty on Counts One and Two. Strachan and Kikivarakis now raise numerous issues regarding the initial search and seizure, the conduct of the trial, and the sentencing.

## II.

### A.

Strachan argues that the search of his vehicle during a routine traffic stop violated the Fourth Amendment and that all evidence obtained as a result of the search should have been suppressed. Strachan contends that after the deputy issued the traffic citation, Strachan was impermissibly detained while a drug dog sniffed the vehicle. We review the district court's findings of fact on a denial of a motion to suppress for clear error and its legal conclusions de novo. *See United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992). In addition, we construe the evidence in the light most favorable to the government, the party who prevailed below. *See United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998).

Under the Fourth Amendment, a person has been seized when "in view of all the circumstances surrounding the incident, a reasonable

person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The *Mendenhall* standard is an objective one, *see United States v. Analla*, 975 F.2d 119, 124 (4th Cir. 1992), and an "encounter does not become a seizure merely because the officers do not tell the defendant that he is free to leave or to refuse to comply with their requests," *id.* In the present case, after the deputy gave Strachan the traffic ticket and explained its significance, he told Strachan to "go ahead." J.A. 254. Rather than driving away, Strachan inquired about a hurricane off the coast of South Carolina and expressed a fear that he would be traveling into the heart of the storm. The deputy assured Strachan that Columbia was far enough from the coast that he and Pratt would not be in danger. At this point the deputy asked Strachan for permission to search the vehicle for weapons and contraband. Strachan asked what his options were, and the deputy informed him that he could say yes or no. Strachan refused permission to search and the other deputy retrieved the drug dog to sniff the car. The dog reacted to the trunk of the vehicle and a search revealed a duffle bag containing cocaine.

We can find nothing in the record to indicate that Strachan had an objective reason to believe that he was not free to go after the deputy explained the ticket and told Strachan he could "go ahead." *See Mendenhall*, 446 U.S. at 554. The remainder of the encounter was voluntary with Strachan making conversation about the weather and the dangers of traveling in close proximity to the hurricane. The Supreme Court has held that a dog sniff alone does not constitute a search under the Fourth Amendment, *see United States v. Place*, 462 U.S. 696, 707-08 (1983), and Strachan was not "seized" while the drug dog sniffed the car, *see Michigan v. Chesternut*, 486 U.S. 567, 575 (1988) (no seizure when police actions "would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement"). Accordingly, the district court did not err in refusing to suppress the evidence obtained as a result of the search of the automobile.

## B.

At Strachan's sentencing, the district court increased Strachan's base offense level for obstruction of justice. The court based the two-level increase on Strachan's instructions to his counsel to ask law

enforcement officers during trial whether they had threatened Strachan by informing him that Pratt had been shot and that Strachan would suffer the same fate if he did not cooperate. The district court viewed the questioning of the officers as an improper attempt by Strachan to influence the jury. We review de novo the district court's interpretation of the Guidelines. *See United States v. Nale*, 101 F.3d 1000, 1003 (4th Cir. 1996).

The Sentencing Guidelines, in pertinent part, provide:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2000). In the commentary to this Guideline there is a list of the types of conduct to which the adjustment applies. *See* U.S.S.G. § 3C1.1, comment. (n.4). Although these examples are not exhaustive, they do provide insight into the nature of the activity by the defendant contemplated by this section. In reviewing them we find these illustrations to involve conduct actually much more egregious in character than asking one's lawyer to question a law enforcement officer about threats allegedly made to obtain a statement. Such a question, even if motivated by the wrong intent found by the district court, seems much closer to the list in Application Note Five of those situations where the adjustment would be inapplicable. *See* U.S.S.G. § 3C1.1, comment. (n.5). Consequently, we agree with Strachan that the enhancement for obstruction of justice was inappropriate.

In defending the district court's enhancement, the government points the court to *United States v. Mitchell*, 85 F.3d 800 (1st Cir. 1996), in which the First Circuit upheld an obstruction of justice increase when Mitchell, indicted for arson, sought to introduce a taped conversation he made after fire destroyed his business. During this conversation with his business partner, Mitchell professed to have no idea whether the business was insured. *See id.* at 808. The district court permitted only small excerpts from the tapes to be admitted at

trial. *See id.* at 807. Mitchell was convicted and at his sentencing hearing the district court increased his sentence for obstruction of justice after finding that the tapes were made in an effort to deceive the police, court, and jury. *See id.* at 814. Affirming the increase, the First Circuit noted that the tape fell squarely within the Guidelines' prohibition against "'producing or attempting to produce a false . . . record during a . . . judicial proceeding.'" *Id.* at 815 (quoting U.S.S.G. § 3C1.1, comment. (n.4(c))). Key to the First Circuit's decision was that "Mitchell d[id] not challenge the district court's factual finding that the tapes were made in an attempt to create a false record." *Id.*

In the present case, the government admits that the events surrounding Strachan's enhancement are atypical. Mitchell's efforts at producing a false record fell squarely within the examples given in the Guidelines, while Strachan's conduct, which consisted of informing his attorneys that the police had threatened him and urging the attorneys to inquire into the matter on cross-examination, does not neatly fit into the examples justifying an enhancement provided in the Guidelines. Also, unlike the *Mitchell* case, Strachan continues to challenge the district court's findings regarding the obstructive conduct—Strachan does not concede that he instructed counsel to inquire about the interrogation in an effort to obstruct a judicial proceeding. Hence, despite the government's best interpretive efforts, neither case law nor the Guidelines provide sufficient support for the district court's two-level increase.

C.

Next, Kikivarakis contends that it was plain error for the government to be permitted to "purchase" the testimony of co-conspirator Brannon, who testified against Kikivarakis in exchange for leniency. In support of this contention, Kikivarakis directs the court to 18 U.S.C. § 201(c)(2), which provides:

> Whoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . authorized by the laws of the United States to hear evidence or take testimony . . . shall

be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2) (West 2000). This court has been faced with the argument that § 201(c)(2) prohibits the government, when acting in accordance with its statutory authority, from offering immunity or leniency to obtain testimony and has held that it does not. *See United States v. Richardson*, 195 F.3d 192, 197 (4th Cir. 1999) ("In construing § 201(c)(2) as we do, we join the unanimous conclusion of circuit courts that have ruled over the past year that the government does not violate § 201(c)(2) by granting immunity or leniency or entering into plea agreements to obtain testimony."), *cert. denied*, 120 S. Ct. 837 (2000). Hence, we reject Kikivarakis' argument that the government improperly purchased the testimony of a co-conspirator.

### D.

Kikivarakis also contends that the district court clearly erred in its determination of drug amounts properly attributable to him. Kikivarakis argues that although 14.86 kilograms of cocaine were found in the duffle bag seized at the traffic stop, only five kilograms should be attributable to him because he was expecting five. The other 9.86 kilograms, he contends, were not reasonably foreseeable. *See United States v. Banks*, 10 F.3d 1044, 1058 (4th Cir. 1993) (observing that in drug conspiracy cases each defendant is responsible for the total amount of drugs involved in the conspiracy so long as those amounts were reasonably foreseeable and within the scope of the conspiracy).

Kikivarakis' reliance on *Banks* and other similar cases is misplaced. The drugs the district court attributed to Kikivarakis were not drugs with which he had no direct personal involvement. Kikivarakis took possession of the duffle bag at the controlled delivery in South Carolina. The district court did not attribute to Kikivarakis for sentencing purpose the acts of other members of the conspiracy and therefore Kikivarakis' foreseeability argument is without merit. Accordingly, the district court did not commit clear error in attributing 14.86 kilograms to Kikivarakis.

In addition to the cocaine in the duffle bag, the district court attributed another kilo of cocaine to Kikivarakis. Co-defendant Brannon

testified that he and Kikivarakis had transported one kilogram of cocaine to the United States just prior to their arrest. Kikivarakis contends that Brannon was not a reliable witness and therefore the kilogram should not be attributed to him. The district court is best suited to make credibility determinations, *see United States v. D'Anjou*, 16 F.3d 604, 614 (4th Cir. 1994), and our examination of the record reveals no evidence to call this determination into doubt. Therefore, we hold that the district judge did not commit clear error in attributing the additional kilogram to Kikivarakis.

E.

Kikivarakis next contends that because of his relative culpability within the overall conspiracy, the district court clearly erred by declining to grant at least a two-level downward adjustment based on the minor role Kikivarakis played in the drug ring. Under § 3B1.2 of the Sentencing Guidelines, "a minimal participant in any criminal activity" is entitled to a four-level decrease, and "a minor participant in any criminal activity" is entitled to a two-level decrease. By way of example, the Guidelines suggest that a defendant would be entitled to a four-level decrease if his role in a large drug smuggling operation was limited to offloading a single drug shipment. *See* U.S.S.G. § 3B1.2, comment. (n.2). The commentary describes a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." *See* U.S.S.G. § 3B1.2, comment. (n.3).

In this case, the evidence indicated that Kikivarakis played more than a minor or minimal role in the conspiracy. He assisted Brannon in transporting one kilogram of cocaine to the United States, and later took possession of a duffle bag containing 14.86 kilograms of cocaine at the controlled delivery in South Carolina. Perhaps he was not the mastermind behind the drug conspiracy, but he certainly was deeply involved with the activities of the conspiracy. Accordingly, the district court did not clearly err in refusing to grant at least a two-level downward adjustment based on Kikivarakis' role in the greater scheme.

## F.

Finally, Kikivarakis in his supplemental brief argues that the term of supervised release imposed by the district court—five years—violates the principles set forth in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). According to Kikivarakis, the district court should have sentenced him to no more than three years supervised release—a period he contends is the maximum term permitted by 18 U.S.C.A. § 3583 (West 1994). In *United States v. Pratt*, No. 99-4424, 2001 WL 101457, at *7 (4th Cir. Feb. 7, 2001), this court held that "[b]ecause § 3583 does not apply to § 841(b)(1)(C), [a] five-year term of supervised release does not exceed the maximum term of supervised release permitted by statute." Hence, Kikivarakis' five-year term of supervised release does not run afoul of *Apprendi*.*

## III.

For the foregoing reasons, we vacate Strachan's sentence and remand for resentencing. The remainder of the district court's challenged rulings are affirmed.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

*Kikivarakis also contends that *Apprendi v. New Jersey*, 120 S. Ct 2348 (2000), renders 21 U.S.C.A. § 841 unconstitutional on its face. We are unpersuaded by the arguments presented and decline to so rule.